No. 47,990

STATE OF KANSAS, *Appellee*, v. JAMES DONNELSON, *Appellant*.

(549 P. 2d 964)

Opinion filed May 8, 1976.

*George A. Groneman*, of White & Groneman, of Kansas City, argued the cause and was on the brief for the appellant.

*Philip L. Sieve*, Assistant District Attorney, argued the cause, and *Curt T. Schneider*, Attorney General, and *Nick A. Tomasic*, District Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: Defendant-appellant, James Donnelson, appeals from convictions by a jury of aggravated kidnapping (K. S. A. 21-3421); rape (K. S. A. 21-3502); and robbery (K. S. A. 21-3426). All three crimes arose out of incidents occurring on November 21, 1973, and involved one victim, a Mrs. J. The defense at trial was alibi and the identity of the perpetrator of the crimes was the critical issue.

The primary point asserted on appeal controlling our decision concerns the admissibility at trial of two prior convictions pursuant to K. S. A. 60-455.

The state's evidence of the facts surrounding the crimes consisted primarily of the testimony of the victim. Mrs. J testified that at approximately 6:30 p. m. on November 21, 1973, at Lapari Bros. Thriftway Store on State Avenue in Kansas City, she was attacked from behind while entering her automobile on the store parking lot. The attacker forced her into her automobile. Mrs. J. screamed, whereupon her attacker began choking her and told her he had a gun and that she should quit screaming. He put his hand over her mouth, whereupon she bit one of his fingers and her assailant reacted by tearing and ripping the tissue beneath her tongue. Her assailant then grabbed Mrs. J's hair and forced her onto the floor of the automobile, holding her there by her hair as he drove away. After driving for an estimated ten to fifteen minutes, the assailant stopped the automobile and forced Mrs. J to climb over the back of the front seat and into the back seat. After finding and taking some checks and money which Mrs. J had hidden under the front seat, the attacker crawled over the seat and raped her. After the rape was completed, Mrs. J was forced into the trunk of the automobile, the attacker locked the trunk and drove her automobile back to the vicinity of the Thriftway Store where she was first assaulted. He then unlocked the trunk and instructed Mrs. J to wait twenty minutes before getting out. Mrs. J waited for a time then got out, went into the store to the manager's office and asked the manager to call the police. When the police arrived they examined Mrs. J's automobile and then took her to the Kansas University Medical Center. The police found Mrs. J's dental plates in the automobile and also raised a fingerprint, which they were unable to match.

Mrs. J described her assailant as being a negro male, twenty-nine

to thirty years of age, five feet ten inches to five feet eleven inches in height, and weighing about 160 to 170 pounds. She testified that she was not good at judging height and weight, but described her attacker as being several inches taller than her own height of five feet six and one-half inches. She described his clothing as dark and rough except for a soft work hat with a bill. She did not notice a mustache, scar or other distinctive facial characteristics. She testified at the preliminary hearing that she only got a good look at her assailant for approximately ten seconds while he was choking her. At trial she testified she was able to view his face for two or three minutes. She explained the discrepancy:

"Well, it's hard to judge time when you are being choked and being threatened to be killed, but I saw him long enough to recognize him."

The victim's husband testified he searched the automobile on the following day and found a receipt issued by Great Lakes Container Corporation to James Donnelson, the defendant. The receipt was dated November 7, 1973, two weeks prior to the crimes in question. It was in the amount of $19.00 and had the defendant's name clearly printed thereon.

The defendant was called to the police station. After being advised of his rights defendant was questioned by police officers concerning the receipt. He acknowledged having received the receipt, but could offer no explanation as to how it got into the victim's automobile. When questioned by Detective Ed Walton about his whereabouts at the time of the crimes defendant said he had been drinking beer and talking with a friend, one Tommy Lee Hall at Hall's home in Kansas City, Kansas. At trial defendant testified he was with Hall from 5:30 or 6 until 8:30 p. m. on the evening in question.

After his interview with the police, defendant was told to return to the police station for a line-up on the following day. The line-up was held and defendant was identified by Mrs. J. Defendant was then placed under arrest and charged with aggravated kidnapping and rape. At the conclusion of the preliminary hearing, on the motion of the state, defendant was bound over for trial on an additional robbery count.

A pretrial conference was held at which time the district attorney advised the court he intended to offer evidence of prior crimes pursuant to 60-455. The convictions in question consisted of burglary (June 13, 1954); second degree robbery (March 1, 1957); second degree robbery (May 24, 1961); aggravated assault (Sep-

tember 15, 1967); second degree burglary (May 13, 1969); and attempted theft over $50.00 (June 21, 1973).

Prior to trial defendant also filed motions to suppress the line-up evidence and to dismiss the charge of robbery which were overruled.

The defendant also filed a pretrial motion opposing the introduction of evidence of the prior convictions for the reason there was no similarity shown between the prior crimes and the offenses with which defendant was charged in the instant case. The record reflects the trial court sustained the motion as to the burglary, assault and theft convictions, but overruled it as to the two second degree robbery convictions. At trial the defendant again objected to the admission of the prior robbery convictions, but they were admitted even though the record is clear that the court was totally unaware of the factual situation surrounding either of the two prior offenses.

On appeal the state concedes admission of the prior convictions was erroneous, but in spite of this concession maintains that a reversal is not required. The state takes the position that we should apply the harmless error rule as we have done in certain other cases involving erroneous admissions of prior convictions under 60-455.

The statutory foundation of the harmless error rule is found in K. S. A. 60-261, which requires the courts of Kansas to disregard any error or defect in the proceeding which does not affect the substantial rights of the parties. We have applied the rule in many cases where the error is not of such nature as to amount to a denial of substantial justice. Application of the rule with respect to erroneous admissions of prior convictions under 60-455 is discussed in depth by Mr. Justice Prager in *State v. Bly*, 215 Kan. 168, 523 P. 2d 397. In the same opinion the general principles of law to be followed in applying 60-455 are reviewed. It is pointed out that the rule limiting evidence of other crimes or civil wrongs in a criminal case is to be strictly enforced and that in determining whether or not to admit evidence of other crimes, a trial court must employ a balancing procedure and weigh the probative value of the evidence offered against its tendency to prejudice the jury. Evidence of other crimes has no real probative value, if the fact for the proof of which it is offered is not substantially in issue. Moreover, it has long been the rule that where a prior conviction of a similar offense is offered for the purpose of proving identity,

the evidence should disclose sufficient facts and circumstances of the other offense to raise a reasonable inference that a defendant committed both offenses. It is not sufficient merely to show that both offenses were for robbery, such as in the instant case. These principles are threaded through our decisions on the subject, spanning a period of many years, e. g., *State v. King*, 111 Kan. 140, 206 Pac. 883. The statutory rule of evidence stated in 60-455 did not materially change the case law as it had developed in Kansas prior to the enactment of the statute. (*State v. Wright*, 194 Kan. 271, 398 P. 2d 339.)

Following *Bly*, Mr. Justice Schroeder in *State v. Cross*, 216 Kan. 511, 532 P. 2d 1357, further elaborated upon the problems of this court dealing with what was characterized as "one of the most troublesome areas" in the trial of a criminal case. We shall not add to what has been said in *Bly* and *Cross*—it will suffice to say that as demonstrated by the case at bar, the problem is still with us.

In the instant case no effort was made by the prosecution to establish the facts, circumstances, or nature of either of the prior robbery offenses. The trial court admitted them with no knowledge of the surrounding facts. We have repeatedly held that relevancy must be established before a former conviction may be admitted to prove some element of the crime charged. Similarity, a pattern or connection between the facts surrounding the prior offense and the one with which the accused is presently charged, must be shown in order to establish relevancy. (See *State v. Gunzelman*, 210 Kan. 481, 502 P. 2d 705, and cases cited therein.) While the determination of relevancy is a matter left to the judicial discretion of the trial judge, such discretion cannot be abused and must be based upon some knowledge of the facts surrounding the prior offense. (*State v. O'Neal*, 204 Kan. 226, 461 P. 2d 801.)

The admission of prior convictions in the instant case had no significance other than the force thereof in showing a disposition of the defendant to commit crime, a result prohibited by 60-455.

In further argument opposing application of the harmless error rule, defendant contends the error in admission of the prior convictions was compounded by the court's instruction under 60-455. The record discloses the trial court submitted a "shotgun" type of 60-455 instruction. The instruction, as reproduced in the record, appears to have been a preprinted or stock form instruction and was submitted with only one word obliterated or blacked out. The deleted word appears to have been "identity" as the other seven

elements remained in the instruction. We have repeatedly disapproved the "shotgun" approach to instructing under 60-455. (See *State v. Clark,* 214 Kan. 293, 521 P. 2d 298.) Moreover, we are unable to understand why identity was deleted since it was the critical issue in the case of the alibi defense. In disapproving "shotgun" instructions we have said that rarely will all of the eight elements enumerated in 60-455 be relevant to issues at trial; thus, we believe the use of a stock 60-455 instruction only increases the risk of error. While defendant argues the instruction as given compounded the error, we are unable to find any objections to the instructions in the record. Even if such be the case, it must be said the error in admitting evidence of the prior convictions was amplified by the giving of the erroneous instruction.

We should observe the trial judge did not have the benefit of our opinion in *State v. Cross,* supra, and probably had not seen our opinion in *State v. Bly,* supra, which was filed only a few days before the instant case was tried.

In determining whether an erroneous admission of evidence is harmless error a relevant factor is the weight of the evidence supporting conviction. (*State v. Fennell,* 218 Kan. 170, 542 P. 2d 686; and *State v. Bly,* supra.) While the line-up identification and unexplained presence of the receipt in the victim's automobile would constitute sufficient evidence to support the verdict on appellate review, we are unable to characterize the evidence as of such a direct and overwhelming nature that the erroneous admission of the prior convictions would not have affected the result of the trial. In view of the shadow cast on the line-up identification by the defendant's attack thereon, we are unable to say that the evidence here measures up to the overwhelming evidence of guilt established in *Bly* and *Fennell.* Therefore, the conviction must be set aside and a new trial granted.

Defendant specifies two additional points which require consideration in view of a retrial of the case. Defendant contends the trial court committed reversible error in refusing to sustain his motion to quash the line-up identification. His claims in this regard are twofold: One that the victim saw defendant in a police station corridor prior to the line-up; and, two, that the clothing worn by other persons in the line-up was so different from that worn by the defendant as to be suggestive to a degree that would taint the line-up proceedings. The defendant testified that the victim and her husband were in a hallway, outside a detective's

office, prior to the line-up. Defendant's wife, a detective, and a bystander testified that the victim must have seen the defendant. Mrs. J testified that she did not observe defendant and his wife in the hallway, and Mrs. J's husband testified that he saw no one in the hallway while he was waiting outside the detective's office. While this conflicting testimony might bear on the credibility of the line-up identification, we do not believe it sufficiently tainted the proceedings so as to require suppression. Concerning the make up of the line-up, we have been supplied with, and have examined, the original photograph of the line-up which was admitted as an exhibit at trial. While defendant was to a degree more neatly dressed than the other line-up subjects, there is no significant difference in the general appearance of the clothing worn by the five subjects. Moreover, Mrs. J originally described her attacker as wearing rough work clothes. Thus, the fact that he was somewhat better dressed than others appearing in the line-up could not have been prejudicial under the circumstances. It is true, defendant is several inches taller than the first description given by Mrs. J, and also appeared to have been wearing a "fine line" mustache which she did not notice. Nevertheless, Mrs. J's identification of defendant in the line-up was positive and unequivocal. Her testimony in this connection appears in the trial transcript as follows:

"Q. You went down on the 23rd. Okay. Now, while you were at the police station on the 23rd, did you have occasion to view a lineup?

"A. Yes.

"Q. And did you pick anyone out of that lineup as being the person who attacked you?

"A. Yes, I did.

"Q. Mrs. Johnson, I want to ask you if there is any doubt, whatsoever, in your mind that this is the man who raped you and robbed you and kidnapped you on November 21st, 1973?

"A. No. If there was, I wouldn't be going through this."

We find no error in the trial court's refusal to quash the line-up proceedings.

Defendant also claims error in the trial court's refusal to dismiss the robbery count which he claims was erroneously added to the information after the preliminary hearing. The complaint filed against defendant at the time of the preliminary hearing charged defendant in count No. 1 with aggravated kidnapping and in count No. 2 with rape. During the course of the preliminary hearing testimony was elicited from Mrs. J that in addition

to the two crimes charged her assailant had also taken a certain amount of money. As a consequence of this testimony the prosecutor moved the magistrate to bind over the accused on a third count of robbery. The defendant argues he was denied a due process of law preliminary hearing on the robbery count. We cannot agree. The defendant was present with counsel when the testimony of robbery was elicited. Defendant had full opportunity to and did cross-examine the witnesses concerning the matter at the preliminary hearing. Defendant was fully aware of the charges against him and the evidence upon which they were based. We believe due process requirements were met. In *State v. Fields,* 70 Kan. 391, 78 Pac. 833, it was held that a defendant, after a preliminary examination has been held, may be bound over for a felony different from that charged in the complaint. The *Fields* case was cited in the recent case of *State v. Scott,* 210 Kan. 426, 502 P. 2d 753, wherein we said a defendant could be properly bound over on any charges satisfactorily proven at the preliminary hearing.

Other points raised by defendant relate to claimed trial errors which need not be considered in view of our disposition of the appeal.

Much of the record filed in this case was illegible which added to the burden of this court on review and necessitated calling for the trial transcript which was used in the preparation of this opinion.

The judgment is reversed and the cause remanded with directions to grant a new trial.