Nos. 99,694
99,695
99,696

STATE OF KANSAS, *Appellee*, v. RAUL MANUEL MAGALLANEZ,
*Appellant*.
(235 P.3d 460)

Opinion filed July 16, 2010.

*Carl Folsom III,* of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Amy L. Aranda,* assistant county attorney, argued the cause, and *Marc Goodman,* county attorney, and *Steve Six,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Raul Manuel Magallanez appeals his jury convictions in three child sexual abuse cases tried together by the district court. The district judge sentenced Magallanez to life imprisonment in 06 CR 681, consecutive to a total of 904 months in 07 CR 94 and 07 CR 95. Magallanez filed this timely appeal, and we have jurisdiction under K.S.A. 22-3601(b)(1).

Magallanez raises 15 issues. The following five are dispositive under the cumulative error doctrine:

(1) Whether the State committed reversible prosecutorial misconduct in closing argument by vouching for the credibility of witnesses, diluting its burden of proof, attempting to inflame the passions of the jury, and misstating the law;

(2) Whether the limiting instruction on prior crimes or civil wrongs was overbroad;

(3) Whether the district judge misapplied the rape shield statute by excluding relevant evidence concerning J.P.'s credibility and veracity;

(4) Whether the district court lacked jurisdiction to convict Magallanez of aggravated indecent liberties with a child in Counts 24 and 34 of 07 CR 94; and

(5) Whether the district judge erred in giving an *Allen*-type instruction to the jury.

## FACTUAL AND PROCEDURAL BACKGROUND

### *J.P. — 06 CR 681*

J.P. was 13 years old in the fall of 2006 when she met Magallanez through a mutual friend. Magallanez was 31 years old but spent much of his time with teenagers. J.P. and Magallanez got to know each other over a few weeks by exchanging phone calls, text messages, and e-mail and through social networking websites like MySpace.com.

On October 4, 2006, J.P. arranged to meet Magallanez after school. Magallanez picked J.P. up in his car and they drove to the zoo. J.P.'s brother saw them together and told his parents. J.P.'s parents took away her cell phone for a week and told her to stop seeing Magallanez. But, when J.P. got her cell phone back, she and Magallanez resumed their frequent calls and texts. J.P. testified that, on November 1, 2006, J.P. left the home where she was babysitting to meet Magallanez in his car and had sexual intercourse with him in the backseat.

In late November, the weekend after Thanksgiving, J.P. spent the night with her friends D.D. and H.H. at D.D.'s sister's house to babysit. Late that evening, J.P. snuck out of the house to see

Magallanez, who was at a nearby park. D.D.'s sister found out, and the story eventually made its way back to J.P.'s mother. The next day, J.P.'s mother confronted her, and J.P. eventually said that she had had sex with Magallanez on October 4 at the zoo. J.P. also reported to the police and later to personnel at the Child Advocacy Center that she had sexual intercourse with Magallanez on October 4.

On December 7, 2006, Magallanez was arrested and charged with rape (sexual intercourse with a child under the age of 14), a Jessica's Law offense. At the preliminary hearing in this case, J.P. testified under oath that she had had sex with Magallanez on October 4. But, on August 7, 2007, while meeting with the prosecutor in preparation for trial, J.P. disclosed that she had lied about the date and location of the sexual intercourse with Magallanez. She then said she had had sexual intercourse with Magallanez at approximately 8 p.m. on November 21, 2006, in Magallanez' car outside the house where she was babysitting.

The same day that J.P. changed her story, the State filed a motion to amend its complaint to change the date of occurrence from October 4 to November 1, 2006. The district judge granted the State's motion the next day, over defense counsel's objection. Trial began 3 days later. The jury convicted Magallanez of rape of J.P., and the district judge sentenced him to life in prison under Jessica's Law. The trial court ordered the sentence to run consecutive to the sentences in the two other cases consolidated for trial.

*S.S. — 07 CR 94*

In the fall of 2005, S.S. was 14 years old and dating Magallanez' nephew, D.S. About half the time, D.S. lived with Magallanez and Magallanez' mother. S.S. would sneak out of her house at night to see D.S. About September 2005, S.S. started spending more time alone with Magallanez. S.S. testified that Magallanez began providing her with alcohol and marijuana on a regular basis.

In October 2005, S.S. and Magallanez began having sexual intercourse and engaged in sexual activities numerous times through October 2006. S.S. testified that Magallanez always provided S.S. with alcohol before having sexual intercourse with her and that she

would get so intoxicated she could barely walk or see straight. S.S. continued to see D.S. and claimed that, on one occasion, Magallanez videotaped S.S. and D.S. engaging in sexual acts.

In October 2005, Magallanez took S.S. to an adult products store called "Whispers," where he bought her sex toys. As a result of this incident, Magallanez was charged and convicted in December 2005 of promoting obscenities to a minor.

Angela Proehl, an investigator with the Kansas Department of Social and Rehabilitation Services, interviewed S.S. in November 2005. S.S. denied any sexual contact with either D.S. or Magallanez. In February 2006, after Magallanez had been incarcerated for his December 2005 conviction, S.S. disclosed that she had engaged in several sex acts with Magallanez. During each, S.S. said, she was either drunk or high. S.S. also stated that Magallanez filmed her giving D.S. oral sex and that many of the alleged sex acts occurred at Magallanez' house.

In the fall of 2006, after Magallanez was released, S.S. resumed her relationship with him. On December 4, 2006, after ending the relationship, S.S. spoke with Detective Mark Schondelmaier, disclosing sexual contacts that had occurred between her and Magallanez after Magallanez was released from prison. S.S. also disclosed knowledge of Magallanez having sexual intercourse with J.P. and K.E. After Magallanez was arrested and charged in J.P.'s case, the State also sought prosecution in S.S.'s case.

As to S.S., Magallanez was convicted of 10 counts of rape based on S.S.'s inability to consent because of intoxication; 3 counts of aggravated criminal sodomy by the same means; 2 counts of aggravated indecent liberties with a child, based on S.S. being between 14 and 16 years of age; 1 count of sexual exploitation of a child; 1 count of indecent liberties with a child; 1 count of indecent solicitation of a child; 1 count of criminal sodomy; 17 counts of felony furnishing alcohol to a minor for illicit purposes; and 1 count of misdemeanor furnishing alcohol to a minor. The court sentenced him to 2,316 months, which was reduced to 452 months under the double rule of K.S.A. 21-4720, consecutive to the sentences in the two other cases consolidated for trial.

*K.E. — 07 CR 95*

K.E. turned 15 in November 2006, having met Magallanez through a friend the previous month. Magallanez and K.E. communicated through texts and instant messages, many of which were sexual in nature. K.E. testified that Magallanez would text her that he wanted to have sex with her. K.E. snuck out of her home and met Magallanez. He provided her with alcohol, and she had sexual intercourse with him. K.E. engaged in sexual acts with Magallanez from October through December 2006.

In November 2006, K.E. allegedly had sex with three young men and Magallanez at a party at Magallanez' house. K.E. claimed that Magallanez provided her with alcohol and marijuana and that she became intoxicated. K.E. testified that all of the acts of sexual intercourse were at Magallanez' suggestion.

On December 20, 2006, Detective Lisa Sage interviewed K.E. regarding the alleged sexual acts with Magallanez and the three young men. K.E. detailed several sexual acts with Magallanez that had allegedly occurred that fall.

As to K.E., Magallanez ultimately was convicted of three counts of rape based on K.E.'s inability to consent because of intoxication; three counts of aggravated indecent liberties with a child; one count of sexual exploitation of a child; and four counts of felony furnishing alcohol to a minor for illicit purposes. The district judge sentenced him to 773 months' incarceration, which was reduced to 452 months under the double rule of K.S.A. 21-4720, consecutive to the sentences in the two other cases consolidated for trial.

## ANALYSIS

We hold that the five listed appellate issues have merit, that they require reversal of all of Magallanez' convictions, and that remand for further proceedings is necessary on all but two counts. We address each of the errors in turn below. We decline to address Magallanez' other claims of error, either because they appear unlikely to arise on remand or deal with sentencing.

*Prosecutorial Misconduct*

On appeal, we analyze allegations of prosecutorial misconduct in two steps.

" 'First, the appellate court must determine whether the comments were outside the wide latitude allowed in discussing the evidence. Second, the appellate court must decide whether those comments constitute plain error; that is, whether the statements prejudiced the jury against the defendant and denied the defendant a fair trial, thereby requiring reversal.' " *State v. Richmond*, 289 Kan. 419, 439, 212 P.3d 165 (2009) (quoting *State v. White*, 284 Kan. 333, Syl. ¶ 1, 161 P.3d 208 [2007]).

See *State v. Tosh*, 278 Kan. 83, 85, 91 P.3d 1204 (2004).

Magallanez argues that there were four instances of prosecutorial misconduct during the State's opening and rebuttal portions of its closing argument in his trial. He entered a timely objection in only one instance, but a timely objection is not required to preserve a prosecutorial misconduct claim based on comments made during opening statements or closing arguments. *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009); *State v. Decker*, 288 Kan. 306, 314, 202 P.3d 669 (2009).

First, the prosecutor asked the jury to pay particular attention to certain jury instructions:

"There's a common knowledge and experience instruction. There's also one that says you determine the weight and credibility of witnesses. That one's fairly self-explanatory. The most important is that you have the right about which a witness has testified to use your common knowledge and experience. That opens up your ability to bring in what you know.

"This is a case of teenagers, and a continuum of teenagers, and an adult male. These are not isolated little pieces. It's a continuum of time through - - at the end of 2005 and through 2006. *For example, you trust children until you have a reason not to. We assume that. We assume we have taught them correctly.* Some people call those adultisms. We, as parents, make inferences. We make beliefs that what we have done is right." (Emphasis added.)

The second comment about which Magallanez complains concerned the reasonable doubt standard. The prosecutor stated: "Reasonable doubt is not beyond any doubt, it's an individual standard. It's a standard that when you believe he's guilty you've passed beyond a reasonable doubt."

Magallanez' third challenge to the prosecutor's closing argument focuses the prosecutor's statement that "[t]he sex with J.P. was not 'a long foreplay lovemaking session' " and from the following comments about S.S. and K.E.:

"Now, you have heard testimony from [S.S.], and you can infer from that, that young lady had an alcohol problem. She drank, and she drank a lot. And [Magallanez] knew that. Did he help her? Did he stop her? Did he go to her parent and say, I know your daughter, she's wanting alcohol all the time? No. *He just loaded her up and used her over and over and over and over and over.*

. . . .

"And then we go play in Peter Pan Park, and what are we doing there? There we're getting about as visible as we can get. And the one boy, where does that boy get sent? Go away, boy, *my nephew and I are going to use her together.*"

"The exploitation is at the party, and the party is - - party spoke for itself . . . You want her, you go use her, too. Who was he telling that to? Other adults? My gosh he - - 14 and 15 - - 14 and 16-year-old boys. He doesn't even stop that. He takes no steps except to exploit them all. He gives them all alcohol, he gives them all drugs, and *tosses* [K.E.] *to them.* Here you go. For wherever she came from, for whatever her problems were, you heard her sister say she brought her here. She got here for some reason. Her sister said she worked and she went to school and she was trying to do the best she could, and instead someone else plies her with alcohol and *tosses her* and exploits boys to do it with her too."

"And again and again *everyone used* [K.E.] *and everyone uses* [S.S.]" Why not? Because they're just making it up. It's no big deal to get around this . . . *By November 12th he's done with* [K.E.] *He's finished with her. Throw* [K.E.] *away.*"

"Fault [S.S.] or not, she sat there in front of people after repeated tellings of this story and said, yes, that's me in my underwear, *so sexualized that it was numbing.*" (Emphasis added.)

The fourth and final prosecutorial misconduct argument asserted by Magallanez is based on the following statements by the prosecutor: "If you can't consent [to sex] because of the effect of drugs or alcohol, . . . which eliminates that ability to consent, it is rape. *If you provide it and it's apparent to you that they're engaging in the use of alcohol to an extent that they're affected, it's rape.*" (Emphasis added.) Magallanez immediately objected to this comment as a misstatement of law. The district judge overruled the objection. Later, discussing Magallanez' sexual relations with K.E., the prosecutor stated: "[K.E.] said . . . she hadn't had anything to drink, so when he fingers her or has intercourse with her there it drops to aggravated indecent. That's a - - law, 14 and 15, *if you don't induce them with alcohol or drugs, it's a different crime.*" (Emphasis added.)

With regard to the first alleged error, it is improper for a lawyer to comment on a witness' credibility. See *State v. Elnicki*, 279 Kan. 47, 60, 105 P.3d 1222 (2005); *State v. Pabst*, 268 Kan. 501, 506, 996 P.2d 321 (2000). "When a case develops that turns on which of two conflicting stories is true, it may be reasonable to argue, based on evidence, that certain testimony is not believable. However, the ultimate conclusion as to any witness' veracity rests solely with the jury." *Pabst*, 268 Kan. at 507. "The point of not allowing a prosecutor to comment on the credibility of a witness is that expressions of personal opinion by the prosecutor are a form of unsworn, unchecked testimony, not commentary on the evidence of the case." *Pabst*, 268 Kan. at 510.

Under this well-settled law, Magallanez' first argument on prosecutorial misconduct has merit. When the prosecutor said, "[Y]ou trust children until you have a reason not to. We assume that. We assume we have taught them correctly," he essentially gave unsworn testimony about the truthfulness of teenagers and children. This statement improperly bolstered the credibility of the State's witnesses and was well outside the wide latitude granted prosecutors in closing argument.

Magallanez' second argument on prosecutorial misconduct also has merit. Our previous cases have demonstrated that prosecutors embellish on the definition of the burden of proof in criminal cases at their peril. See *State v. Brinklow*, 288 Kan. 39, 49-50, 200 P.3d 1225 (2009) (discussing *State v. Wilson*, 281 Kan. 277, 286, 130 P.3d 48 [2006]); and *State v. Bunyard*, 281 Kan. 392, 406, 133 P.3d 14 (2006) (citing to *State v. Henry*, 273 Kan. 608, 619, 44 P.3d 466 [2002]). This case is another demonstration of that point.

The prosecutor's statement that the measure of reasonable doubt is "an individual standard . . . a standard that when you believe he's guilty you've passed beyond" did, as Magallanez asserts, incorrectly define and impermissibly dilute the State's burden of proof. A juror's mere belief that an accused individual is guilty does not automatically mean that the State has met its burden. See *Brinklow*, 288 Kan. at 49-50 (prosecutor had told jury reasonable doubt satisfied when jury "just knew" defendant guilty; according to prior cases, "[i]f a jury cannot convict because com-

mon sense tells it the defendant is guilty and cannot convict because it is simply reasonable to believe the defendant did it, then it is likewise improper to convict because the jury just knows that the defendant did it"). Such a misstatement of law is outside the wide latitude given to prosecutors in closing argument. See *Bunyard*, 281 Kan. at 406. "A misstatement of the law by the prosecutor denies the defendant a fair trial when the facts are such that the jury could have been confused or misled by the statement." 281 Kan. at 404.

Magallanez challenges the third set of statements by the prosecutor set out above as irrelevant to any point of law and thus designed exclusively and inappropriately to inflame the jury. The State argues that the statements drew reasonable inferences based on trial evidence showing that Magallanez spoke to the victims during the relevant time period, that he had sexual relations with S.S. and K.E. after they became intoxicated, and that he orchestrated K.E.'s sexual activity with others. The State also argues that the statements were supported by S.S.'s testimony that she felt Magallanez had taken advantage of her. As to the statement regarding the length of Magallanez encounter with J.P., the State argues that this comment was intended to show the jury that the crime was committed within a short gap in time between text messages and cell phone calls shown by phone records.

"Prosecutors are not allowed to make statements that inflame the passions or prejudices of the jury or distract the jury from its duty to make decisions based on the evidence and the controlling law." *State v. Baker*, 281 Kan. 997, 1016, 135 P.3d 1098 (2006); see also *State v. Tosh*, 278 Kan. 83, 90, 98, 91 P.3d 1204 (2004) (prosecutor's remark that victim had been raped second time was a character attack at trial outside wide latitude prosecutors allowed in discussing evidence); *State v. Henry*, 273 Kan. 608, 621, 44 P.3d 466 (2002) (prosecutor's comment urging jury to think about Mother's Day, how victim's mother felt inflamed passion, prejudice of jury); but see *State v. Cravatt*, 267 Kan. 314, 336, 979 P.2d 679 (1999) (prosecutor's comment that jury should not let defendant get away with killing 21-year-old victim not improper; State asking

"jury to seriously consider the nature of the defendant's act toward the victim").

The State is correct that the challenged statements drew reasonable inferences from the admitted evidence. Testimony and documents demonstrated Magallanez communicated with S.S. and K.E. during the relevant time period, that he provided S.S. and K.E. with alcohol, that S.S. and K.E. had trouble functioning as a result, and that Magallanez had sexual intercourse, apparently not marked by time-consuming tenderness, with each of them. The prosecutor's employment of the terms "used," "throw away," and "toss" was perhaps more colorful than it needed to be, gratuitously implying that Magallanez treated his young victims like so much garbage, but we do not regard these statements as outside the wide latitude we grant prosecutors in discussing the evidence. Rather, this language, the reference to the absence of foreplay, and the prosecutor's observation that S.S.'s reaction was "so sexualized that it was numbing" amounted to allowable argument on Magallanez' pattern of conduct and S.S.'s demeanor on the stand.

Finally, Magallanez contests the legal accuracy of the last set of statements by the prosecutor on the role of a victim's intoxication on its theories on rape and sodomy.

The prosecutor was correct that the applicable statutes mention the mere "effect" of alcohol or drugs. K.S.A. 21-3502 states that rape is "[s]exual intercourse with a person who does not consent to the sexual intercourse . . . when . . . the victim is incapable of giving consent because of the *effect* of any alcoholic liquor, narcotic, drug, or other substance, which condition was known by the offender or was reasonably apparent to the offender." (Emphasis added.) Likewise, under K.S.A. 21-3506, aggravated criminal sodomy can occur with an individual who does not consent or who is incapable of giving consent "because of the *effect* of any alcoholic liquor, narcotic, drug, or other substance, which condition was known by the offender or was reasonably apparent to the offender." (Emphasis added.) However, a general effect on a victim is not all the State must prove. When the State's theory is lack of consent based on the victim's intoxication, it must also show that

the intoxication made the victim's consent impossible and/or legally ineffective.

The context saves the State from a further assessment of error attributable to these statements. When the prosecutor's references to the importance of the effect of intoxication are read holistically with surrounding text, it becomes apparent that he was attempting to explain the difference among charges brought by the State. Those instances in which K.E. and Magallanez engaged in sexual intercourse when K.E. *was not* under the influence of alcohol or drugs led to charges of aggravated indecent liberties. Those instances in which K.E. *was* under the influence of alcohol or drugs led to charges of rape. Although the prosecutor came very close to stepping over the line in this instance, we are persuaded that these comments were inartful but not inaccurate.

Having established that there were two instances of error by the prosecutor here, we would ordinarily move to the second prong of prosecutorial misconduct analysis, asking whether the conduct prejudiced Magallanez and denied him a fair trial. See *State v. Carter*, 284 Kan. 312, 327, 160 P.3d 457 (2007).

" 'In the second step of the two-step prosecutorial misconduct analysis, the appellate court considers three factors to determine whether a new trial should be granted: (1) whether the misconduct is gross and flagrant; (2) whether the misconduct shows ill will on the prosecutor's part; and (3) whether the evidence against the defendant is of such a direct and overwhelming nature that the misconduct would likely have little weight in the minds of the jurors. None of these three factors is individually controlling. Before the third factor can ever override the first two factors, an appellate court must be able to say that the harmlessness tests of both K.S.A. 60-261 (inconsistent with substantial justice) and *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967) (conclusion beyond reasonable doubt that the error had little, if any, likelihood of having changed the results of the trial), have been met.' " *Richmond*, 289 Kan. at 440 (quoting *State v. Bryant*, 285 Kan. 970, Syl. ¶ 2, 179 P.3d 1122 [2008]).

See also *Tosh*, 278 Kan. at 93 (second step essentially directed to whether misconduct so prejudicial that it denied fair trial).

Viewed in isolation, and given the amount of evidence against Magallanez, we would be disinclined to hold that the prosecutor's two errors require reversal under the second prong of our analysis. Neither error appears to be gross and flagrant, and we detect no

ill will in the prosecutor's conduct. These errors cannot, however, be viewed in isolation. There were other errors that impeded the conduct of a fair trial in this case, as we explain further below.

*Shotgun Limiting Instruction on Prior Crimes or Civil Wrongs*

Before and during trial, evidence was admitted of three prior crimes or civil wrongs committed by Magallanez. First, the State filed a pretrial motion to admit evidence of the "Whispers" incident, arguing the evidence showed Magallanez' motive and intent. Magallanez objected. The district judge granted the State's motion, holding that the evidence was admissible to prove Magallanez' plan, knowledge, and preparation, but he also noted that Magallanez would have a continuing objection when the evidence was admitted during trial.

At trial the judge also admitted evidence of a second rape of J.P. Both J.P. and her mother testified that Magallanez forced J.P. to have sex during the weekend after Thanksgiving 2006. The defense did not object to J.P.'s mother's testimony during direct, and the defense introduced J.P.'s testimony on this topic during her cross-examination.

Evidence of a third prior crime or civil wrong came in through K.E., who testified without objection on both her direct examination and cross-examination that Magallanez had sold marijuana.

The district judge gave the limiting instruction from PIK Crim. 3d 52.06: "Evidence has been admitted tending to prove that the defendant committed crimes other than the present crimes charged. This evidence may be considered solely for the purpose of proving the defendant's motive, opportunity, intent, preparation, plan, knowledge, or identity." Magallanez did not object. Now, for the first time on appeal, he argues this instruction's overbreadth requires reversal.

Because Magallanez failed to object to the giving of this instruction, this court reviews this issue under the clearly erroneous standard. See *State v. Vasquez*, 287 Kan. 40, Syl. ¶ 6, 194 P.3d 563 (2008). "Instructions are clearly erroneous only if the reviewing court is firmly convinced there is a real possibility that the jury

would have rendered a different verdict if the error had not occurred." *Vasquez*, 287 Kan. 40, Syl. ¶ 6.

The instruction given by the court has been described as a "shotgun" instruction for its failure to focus specifically on the object of proof, and it has been repeatedly criticized by this court. See *State v. Donnelson*, 219 Kan. 772, 777, 549 P.2d 964 (1976); *State v. Moore*, 218 Kan. 450, 455-56, 543 P.2d 923 (1975); *State v. Rasler*, 216 Kan. 582, 587, 533 P.2d 1262 (1975); *State v. Bly*, 215 Kan. 168, 176, 523 P.2d 397 (1974) *abrogated on other grounds State v. Mims*, 220 Kan. 726, 556 P.2d 387 (1976). As we have stated previously, rarely will all eight of the factors enumerated in K.S.A. 60-455 and PIK Crim. 3d 52.06 be at issue in a single trial; thus the shotgun instruction is rarely proper and increases the risk of error. See *Donnelson*, 219 Kan. at 777; *State v. Gibson*, 30 Kan. App. 2d 937, 950, 52 P.3d 339 (2002). "Those elements which are obviously inapplicable should not be instructed upon." *Bly*, 215 Kan. at 176.

Regarding the "Whispers" evidence, the trial court determined that evidence of the prior conviction for promoting obscenity to a minor was relevant to prove Magallanez' plan, knowledge, and preparation. Although we agree that admission for these limited purposes was proper, the district judge should have listed only these purposes in any related limiting instruction. It is error to instruct upon any K.S.A. 60-455 factor that is obviously inapplicable. As to the evidence of the second rape of J.P. and Magallanez' alleged selling of marijuana, the judge also erred in failing even to specify the relevant factor to be proved, much less to instruct only upon it. See *State v. Gunby*, 282 Kan. 39, 48, 144 P.3d 647 (2006).

Given the weight of the evidence against Magallanez, these errors on the limiting instruction for the K.S.A. 60-455 evidence may have been deemed harmless standing alone. But they do not stand alone. Instead, they, like the two incidents of prosecutorial misconduct discussed above, are among the errors we must consider in the cumulative error calculus below.

*Partial Exclusion of Relevant Evidence*

On this issue, Magallanez alleges that the district judge improp-

erly excluded a portion of a letter from J.P. to Magallanez, which discussed J.P.'s sexual history and contained an admission that she lied to Magallanez about it. The defense filed a pretrial motion for admission of the letter, arguing that it would be useful to impeach J.P.'s credibility. The State objected that the letter was barred by the rape shield statute, K.S.A. 21-3525. The district judge agreed, saying: "[T]he fact that [J.P.] may not have been a virgin or had sex on a previous time [was] not relevant in this case."

During J.P.'s testimony at trial, the prosecutor asked her if she and Magallanez ever talked about sex. J.P. said that Magallanez had asked her how she felt about it and that she had told him she "wanted to lose [her] virginity to someone . . . [she] really cared about." Later in J.P.'s direct examination, the State moved to admit a redacted version of the disputed letter. Magallanez objected, arguing that the entire letter should be admitted because J.P.'s testimony implying she had been a virgin when she and Magallanez had sex opened the door to evidence of her earlier sexual experience. The district judge overruled Magallanez' objection and admitted the redacted version of the letter.

Earlier cases have held that our review of a district judge's decision to exclude evidence under the rape shield statute is subject to an abuse of discretion standard. See *State v. Lackey*, 280 Kan. 190, 219, 120 P.3d 332 (2005); *State v. Zuniga*, 237 Kan. 788, 793, 703 P.2d 805 (1985); *State v. Bressman*, 236 Kan. 296, 300, 689 P.2d 901 (1984). Recently, however, this court has refined its general analysis of evidentiary rulings and determined that multiple steps are required. See *State v. Reid*, 286 Kan. 494, 504-09, 186 P.3d 713 (2008). These steps must be followed for evidence that may be covered by the rape shield statute as well.

First, the court determines relevance, which has two components, materiality and probativeness. Materiality concerns whether the fact to be proved " 'has a legitimate and effective bearing on the decision of the case.' " *State v. Garcia*, 285 Kan. 1, 14, 169 P.3d 1069 (2007) (quoting *State v. Faulkner*, 220 Kan. 153, 156, 551 P.2d 1247 [1976]). Our standard of review for materiality is de novo. *Reid*, 286 Kan. at 505. On probativeness, the court examines whether the offered evidence has " 'any tendency in reason to

prove' " a disputed material fact. *Reid*, 286 Kan. at 505. This court reviews probativity for abuse of discretion. *Reid*, 286 Kan. at 507.

" ' "Once relevance is established, evidentiary rules governing admission and exclusion may be applied either as a matter of law or in the exercise of the district judge's discretion, depending on the contours of the rule in question. [Citation omitted.] When the adequacy of the legal basis of a district judge's decision on admission or exclusion of evidence is questioned, we review the decision de novo." ' " *Reid*, 286 Kan. at 503 (quoting *State v. Gunby*, 282 Kan. 39, 47-48, 144 P.3d 647 [2006]).

The contours of the rule in question here are found in the rape shield statute, which provides that, in a rape prosecution, "evidence of the complaining witness' previous sexual conduct with any person including the defendant shall not be admissible, and no reference shall be made thereto in any proceeding before the court" unless the court finds the evidence relevant and otherwise admissible. K.S.A. 21-3525(b).

At the preliminary hearing, J.P. testified, "We were talking, and he asked me how I felt about my virginity and how I felt about losing it." The State asked, "What did you tell him?" And J.P. responded, "I told him that if I wanted to lose it I would want to lose it to someone I really cared about." J.P. further testified that, following this conversation, she and Magallanez got into the backseat of his car and had sex.

Shortly before trial, Magallanez filed a sealed motion seeking a ruling on admission of the entire first page of a letter from J.P. to Magallanez. Although we recognize the sensitive nature of the letter's content, for purposes of discussion and decision, we must include the text of the letter in its entirety.

"Malaki,

"Hey! Whats up my sexy man friend? Not to much here . . . just really bored!! . . . Okay and how you always ask me if I think about you everyday . . . well . . . I don't!! I think about you every second of every minute of every of every hour of every day!! Isn't it crazy?? I think it is!! So about you wanting a two-page note. I don't know if I can make it that long!! . . . (lolz) Sorry for the sloppy handwriting this pencil sucks ASS!! But yea . . . I can't stop thinking about you! Do you know you have like the prettiest eyes!! OOO . . . yea!! I WANT MY POEM BOOK BACK!!! Gosh I need it I got so much stuff I need to write! Its all going through my head right now!! Yea . . . So the other night on the phone was funny!! The

whole andy going . . . Can I break you off? What does that meen? Can I break you off? What does that meen? Give it to you good? (lol) (lmao)!!!!! Find about the whole me not being a virgin well I didn't tell you because I wanted to forget about it!!! It only lasted like 5 min. b4 I wanted him to stop!! It was horrible and it was THE WORST NIGHT OF MY LIFE!! You please 4 give me?? Im really sorry 4 lieing to you but I really don't want anyone to know especially you!!! But that was all in the past and I don't want to talk about it! Wow . . My handwriting really sucks today!!"

The district judge ruled that J.P.'s virginity was irrelevant to the case and that the content of the letter regarding J.P.'s previous sexual encounter was barred by the rape shield statute. Specifically, he noted that the rape charge depended upon J.P. being younger than 14, not on her behavior: "[I]t doesn't matter what the actions of the victim were in this case because of the nature and the age of the victim." In addition, in the judge's view, other evidence to impeach J.P.'s credibility was available to the defense.

At this point in the case, the district judge correctly discerned that the letter was clearly probative on J.P.'s sexual history, but he also correctly ruled that evidence of J.P.'s sexual history was not material to whether she had been raped by Magallanez. Excluding any portion of the letter *to prove J.P. had been sexually active before her encounters with Magallanez* was appropriate because such evidence was covered by the rape shield statute and was not otherwise relevant and admissible for this purpose because of its failure to meet the materiality requirement of the relevance inquiry.

However, the district judge appears to have failed to fully grasp the secondary significance of the letter. The letter also was material and probative evidence—indeed, the best evidence the defense could imagine having—that J.P. was capable of lying and had lied in the past about her sexual conduct. This evidence was at the heart of the defense theory, *i.e.*, that J.P. was lying about Magallanez in this case. Under these circumstances, the letter met the exception to the shield erected by the statute. It was otherwise relevant and admissible *for this impeachment purpose*. It was not enough for the district judge merely to observe that other impeachment evidence existed, when none could have matched the power of J.P.'s

admission in her own handwriting that she had lied about her sexual history.

At trial, J.P. repeated that she had told Magallanez she wanted to lose her virginity to someone she cared about, and the State admitted a redacted form of the letter that omitted everything between "(lol) (lmao)!!!!!" and "My handwriting really sucks today!!" The State was interested in sponsoring circumstantial evidence of the intimate nature of J.P.'s relationship to Magallanez. It may also have wanted to prevent the jury from hearing that J.P. was sexually experienced, hoping to capitalize on any purity bias that could draw paternalistic sympathy. The defense made a timely objection, again seeking to admit the entire page of J.P.'s letter. But the district judge did not change his pretrial ruling.

This was error. Regardless of whether the rape shield statute could have previously been applied to prevent the defendant's introduction of evidence of J.P.'s sexual history that was not otherwise relevant and admissible, it could no longer be applied to prevent Magallanez from impeaching J.P.'s own testimony on that subject or from demonstrating that she had lied about it before. Again, J.P.'s credibility was key. And, as Magallanez argued at trial and before this court, the State opened the door to the otherwise off-limits issue of J.P.'s virginity. Although not invoked by either party, K.S.A. 21-3525(c) makes clear that there is an exception to the statutory shield in situations such as the one before us here. If a prosecutor introduces evidence of a complaining witness' previous sexual conduct or a complaining witness testifies to that conduct, the defense need not be silent. "If such evidence or testimony is introduced, the defendant may cross-examine the witness who gives such testimony and offer relevant evidence limited specifically to the rebuttal of such evidence or testimony introduced by the prosecutor or given by the complaining witness." K.S.A. 21-3525(c). The redacted portion of the letter would have rebutted both J.P.'s statement implying she was a virgin when she first had sex with Magallanez and impeached her testimony overall. See *State v. Atkinson*, 276 Kan. 920, 931, 80 P.3d 1143 (2003) (citing K.S.A. 60-420) (error to exclude evidence of complaining witness' inconsistent statements to police about prior sexual history with

defendant; once inadmissible evidence elicited, similar evidence can be admitted to rebut); compare *State v. Rakestraw*, 255 Kan. 35, 44-46, 871 P.2d 1274 (1994) (citing *State v. Purdy*, 228 Kan. 264, Syl. ¶ 2, 615 P.2d 131 [1980]) (when party seeks to introduce redacted statement into evidence, redaction must not distort its meaning; if "the complete statement is exculpatory and the redacted statement is inculpatory, we must conclude that the redacted statement distorts the meaning of the complete statement"); *Dewey v. Funk*, 211 Kan. 54, 57, 505 P.2d 722 (1973) (when party introduces inadmissible, prejudicial evidence, opposing party may introduce similar evidence as needed to remove unfair prejudice; litigant "who draws from his own witness irrelevant testimony which is prejudicial to the opposing litigant ought not to object to its contradiction on the ground of its irrelevancy").

We thus conclude that the district judge erred in refusing to admit the redacted portion of the letter written by J.P. Rather than address whether this error requires reversal on its own, we will address it in our discussion of cumulative error below.

*Aggravated Indecent Liberties with a Child as Lesser Included Offense of Rape*

Counts 24 and 34 of the second amended complaint alleged that Magallanez raped S.S. The trial court instructed the jury on aggravated indecent liberties with a child as a lesser included offense of rape for these counts. For both counts, the jury acquitted Magallanez of rape and convicted him of aggravated indecent liberties. Magallanez argues that the district court lacked jurisdiction to convict him of aggravated indecent liberties because aggravated indecent liberties is not a lesser included offense of rape. See *State v. Belcher*, 269 Kan. 2, 8, 4 P.3d 1137 (2000). The State concedes the lack of jurisdiction.

Magallanez' convictions of aggravated indecent liberties as to S.S. must be reversed. He cannot be retried on the greater charge, as conviction of what the jury believed, based on erroneous instruction, was a lesser charge functions as a de facto acquittal of the greater. See *State v. McCorgary*, 218 Kan. 358, 368, 543 P.2d 952 (1975).

### Allen-*type Instruction*

Magallanez argues that the giving of the following instruction before jury deliberations began was reversible error:

"Like all cases, this is an important case. If you fail to reach a decision on some or all of the charges, that charge or charges are left undecided for the time being. It is then up to the state to decide whether to resubmit the undecided charges to a different jury at a later time. Another trial would be a burden on both sides.

"This does not mean that those favoring any particular position should surrender their honest convictions as to the weight or effect of any evidence solely because of the opinion of other jurors or because of the importance of arriving at a decision.

"This does mean that you should give respectful consideration to each other's views and talk over any differences of opinion in a spirit of fairness and candor. If at all possible, you should resolve any differences and come to a common conclusion.

"You may be leisurely in your deliberations as the occasion may require and take all the time you feel necessary." (Emphasis added.)

Magallanez did not object to this instruction at trial; therefore, as previously noted, we employ the clearly erroneous standard on review. *State v. Ellmaker*, 289 Kan. 1132, 1145, 221 P.3d 1105 (2009). Under this standard, the court must determine whether " '[it is] firmly convinced there is a real possibility the jury would have rendered a different verdict if the error had not occurred.' " *State v. Salts*, 288 Kan. 263, 265-66, 200 P.3d 464 (2009).

Generally, if the subject *Allen*-type instruction taken from PIK Crim. 3d 68.12 has been given before deliberations begin, this court has not found reversible error. See *State v. Makthepharak*, 276 Kan. 563, 569, 78 P.3d 412 (2003); *State v. Anthony*, 282 Kan. 201, 216, 145 P.3d 1 (2006). However, Magallanez takes particular issue with the emphasized language—another trial would be a burden on both sides—which has been removed by the PIK Committee since his trial.

This court has specifically addressed this language in two recent cases. In *Salts*, this court held that including the language was error because it was misleading and inaccurate; however, it was not reversible under the clearly erroneous standard. *Salts*, 288 Kan. at 266-67.

More recently, in *Ellmaker*, this court again acknowledged that including the challenged language was error because it was misleading and inaccurate. Again, however, the court ruled that there was no real possibility the jury would have returned a different verdict without the error. *Ellmaker*, 289 Kan. 1146-47.

Here, we will not consider whether the language, standing alone, constitutes reversible error. Rather, it will be a factor in our cumulative error discussion below.

## Cumulative Error

Magallanez argues that, even if the individual errors discussed above do not warrant reversal, their cumulative effect does.

"Cumulative trial errors, considered collectively, may be so great as to require reversal of a defendant's conviction. The test is whether the totality of the circumstances substantially prejudiced the defendant and denied him or her a fair trial. No prejudicial error may be found under the cumulative effect rule if the evidence is overwhelming against a defendant." *State v. Cosby*, 285 Kan. 230, 250, 169 P.3d 1128 (2007) (citing *State v. Anthony*, 282 Kan. 201, 216-17, 145 P.3d 1 [2006]).

This court has recognized often that the federal and state constitutions do not guarantee a perfect trial, but they do guarantee a fair one, even when the defendant stands accused of unspeakably horrendous crimes. *State v. Hayden*, 281 Kan. 112, 124, 130 P.3d 24 (2006). This case is one of the rare ones in which cumulative error dictates reversal of the defendant's convictions and remand for further proceedings, because it is our view Magallanez did not get a fair trial and the evidence was not so overwhelming as to overcome the error. The five errors that, viewed collectively, substantially prejudiced Magallanez and denied him a fair trial were: prosecutorial misconduct, the overbreadth of the trial court's shotgun limiting instruction under K.S.A. 60-455, the redaction of J.P.'s letter to Magallanez, lack of jurisdiction to convict on aggravated indecent liberties as to S.S., and the inclusion of the "burden on both sides" language in the *Allen*-type instruction.

We have discussed already the potential danger when prosecutors embellish the burden of proof required in criminal cases, and the prosecutor committed this error by diluting the reasonable

doubt standard in this case. Our prior case law also recognizes a defendant is entitled to have guilt determined solely based on the evidence introduced at trial, not other circumstances. *State v. Bloom*, 273 Kan. 291, 306, 44 P.3d 305 (2002); *Taylor v. Kentucky*, 436 U.S. 478, 485, 56 L. Ed. 2d 468, 98 S. Ct. 1930 (1978). This right was impaired by the misleading portion of the *Allen* instruction indicating that another trial would burden both sides. This trial was further tainted by evidentiary and argument issues; the prosecutor's improper comment that "you trust children until you have reason not to" exacerbated the district judge's error in barring admission of the very evidence proving that one of the victims had lied before about her sexual activity. Furthermore, the district judge failed to properly instruct the jury on limiting use of the evidence of Magallanez' prior crimes. Each error, viewed independently, would not have been enough to require reversal, but we cannot hold Magallanez received a fair trial when the errors are aggregated.

Further, while we do not discuss the propriety of consolidating the three cases for trial, we hold we must reverse all of the convictions in this case. At least the prosecutorial misconduct, *Allen* instruction, and shotgun K.S.A. 60-455 limiting instruction infected all three cases.

Magallanez' lesser offense convictions of aggravated indecent liberties with a child S.S. on Counts 24 and 34 are reversed. His remaining convictions are reversed and those remaining charges are remanded to the district court for further proceedings.