NOT DESIGNATED FOR PUBLICATION

No. 126,457

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRANDON SEEPERSAD,
*Appellant.*

MEMORANDUM OPINION

Appeal from Douglas District Court; AMY J. HANLEY, judge. Submitted without oral argument. Opinion filed July 19, 2024. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Jon Simpson*, senior assistant district attorney, *Suzanne Valdez*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., BRUNS and SCHROEDER, JJ.

PER CURIAM: Brandon Seepersad, from his apartment, observed someone with a truck parked by his car and decided to go check it out with his gun in hand. Seepersad now timely appeals from his conviction and sentence for one count of aggravated assault, arguing the prosecutor's comments in closing arguments denied him the right to a fair trial. After a complete and thorough review of the record, we find no error and affirm.

1

A jury convicted Seepersad of one count of aggravated assault for acts committed on the night of March 27, 2021. According to Seepersad, he was out on the balcony of his second-floor apartment that night when he noticed a note someone left on his car. He went to the parking lot and retrieved the note from his car, then returned to his apartment. He was concerned upon examining the note because there had been recent incidents of unknown persons walking through the apartment complex's parking lot looking into cars at night with flashlights. Seepersad was also aware a strange note had recently been left on the door of a neighbor's apartment. He attempted to call the police but discovered his phone was dead, so he plugged in his phone and went back to his porch to issue a loud verbal warning to whomever left the note. After issuing this verbal warning, Seepersad claimed he saw two people wearing dark clothing and sunglasses come around the corner of the parking lot. He yelled at them and demanded they identify themselves, but they turned and ran back around the corner out of his view. Seepersad put on his boots and grabbed his handgun. He then went downstairs to check on his neighbor, but she was not home, so he proceeded to the parking lot to check his car.

Seepersad claimed he saw a man in a hat and large hooded sweatshirt with a truck backed up to his car. The man was standing by the truck when Seepersad approached him with his pistol drawn. Seepersad alleged he demanded to know what the man was doing near his car. The man responded he was just "looking at cars." Seepersad testified he told the man to get in his truck and leave the area immediately, and the man complied. He followed the man's truck out of the parking lot with his gun drawn the whole time. Seepersad went to his apartment to get his phone, but by the time he reached his apartment, police had arrived.

Other witnesses provided differing accounts to the jury. One witness testified he was a tow truck driver for Lighthouse Towing, which had a contract with the apartment

complex to remove cars parked in its lot that did not have parking permits. He arrived at the apartment complex around 9:30 p.m., accompanied by another tow truck driver who was not identified at trial. Both drivers parked their tow trucks on the edge of the parking lot and went through the lot with flashlights to check for vehicles without valid parking permits. The tow truck driver determined Seepersad's vehicle did not have the required permit, so he brought his tow truck near Seepersad's vehicle to tow it away. As he was getting ready to tow the vehicle, the driver felt something pressed against the back of his head. He turned around and saw Seepersad pointing a handgun in his face. Seepersad asked the driver why he was taking his car. The driver explained it was because he did not have a parking permit. While still pointing the gun at the driver, Seepersad told him he could not tow his car. The driver agreed to let Seepersad's car go and left the parking lot in his tow truck, with Seepersad following him with his gun drawn. The driver admitted there were no flashing lights or other illumination of his tow truck at the time. However, the tow company's logos were on the side of the truck and the driver was wearing reflective clothing, which should have indicated to Seepersad the driver was acting with legitimate authority.

Another witness was a tenant who lived in the apartment above Seepersad. He was aware of vehicles being towed from the parking lot due to lack of parking permits. When he heard the trucks come into the lot around 9:30 p.m., he went onto his balcony to see what was happening. He noticed the tow truck had pulled up beside a red van he had not seen before. The tenant testified he heard someone on the balcony below his asking the tow truck driver if he was planning to take the vehicle.

The tenant continued watching and saw someone approach the tow truck driver and point a gun at his face. The tenant asked his partner to call the police. He continued watching as the tow truck driver got in his truck and exited the parking lot. The tenant saw the man with the gun following the tow truck as it exited the parking lot.

3

A responding officer made contact with the tow truck driver. Seepersad subsequently came out of his apartment and was arrested. Officers later obtained a search warrant and seized a handgun from Seepersad's apartment.

At trial, Seepersad did not deny he pointed the gun at the driver; rather, he argued he was reasonably acting in defense of his property based on the circumstances as he perceived them. Nevertheless, the jury convicted him as charged. The district court sentenced Seepersad to 13 months' imprisonment but granted his motion for dispositional departure and suspended his sentence to 24 months' probation. Additional facts are set forth as necessary.

ANALYSIS

Seepersad presents one issue on appeal for us to address, claiming the prosecutor's statements in closing arguments constituted prosecutorial error and denied him the right to a fair trial by misstating the evidence and diluting the State's burden of proof.

*Standard of Review*

We use a two-step process to evaluate claims of prosecutorial error: error and prejudice.

> "'To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if

the State can demonstrate "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict."'" *State v. Sieg*, 315 Kan. 526, 535, 509 P.3d 535 (2022).

A prosecutor commits error by misstating the law. *State v. Watson*, 313 Kan. 170, 179, 484 P.3d 877 (2021); see *State v. Magallanez*, 290 Kan. 906, 914, 235 P.3d 460 (2010) (misrepresentation of burden of proof in closing argument). A prosecutor also errs when arguing a fact or factual inference without evidentiary foundation. *Watson*, 313 Kan. at 179.

*Discussion*

Seepersad complains the State, in its rebuttal closing argument, improperly argued:

> "[T]his case is not a who done it. It's not even one with conflicting stories. Everyone pretty much agrees exactly what happened here, which is that this tow truck driver was held at gun point, first on foot and when he was not in the car, and then as he had to drive out of the lot. Everyone agrees on that. Even the defendant. That's why this is not a complicated case."

Seepersad claims the trial evidence did not support the prosecutor's assertion there were no conflicting stories. He further asserts there was no evidence showing this case was more or less complicated than any other case. Additionally, he claims the prosecutor's assertion it was not a complicated case misstated the law by impermissibly diluting the State's burden of proof.

Seepersad's arguments are unpersuasive. The State was correct there was no conflict between the various witnesses' testimony as to whether the tow truck driver was

held at gunpoint by Seepersad and forced to leave the parking lot. Because of that, the case was not complicated in light of Seepersad's defense-of-property argument. The only meaningfully disputed question was whether Seepersad knew or should have known the person he pointed the gun at was a tow truck driver when he confronted him. What Seepersad fails to acknowledge is right after making the complained-of statements, the prosecutor told the jury:

> "What you have to ask yourself though is Mr. Seepersad excused by the law in his actions because he had no idea who he was holding the gun at, he didn't know it was a tow truck driver, or did Mr. Seepersad know, in fact, that [it] was a tow truck driver and hold him at gun point because he didn't want his car towed."

The prosecutor later told the jury: "If you really believe he had no idea that was a tow truck driver and believes he was defending his car, then find him not guilty, but you know that's not in accordance with the evidence, you know it doesn't make common sense under the testimony." These statements were part of a well-reasoned argument based on the various witnesses' trial testimony as to why the jury should find Seepersad's defense-of-property argument unpersuasive. The prosecutor did not misstate the evidence presented at trial, nor did the prosecutor misstate the law by diluting the State's burden of proof. We find Seepersad's argument fails as he has not established the prosecutor's comments were erroneous.

But even if the comments were erroneous, Seepersad was not prejudiced. The complained-of comments were brief and isolated and did not draw an objection. The argument focused in large part on points Seepersad conceded—the victim was, in fact, a tow truck driver, and Seepersad confronted him at gunpoint. The district court instructed the jury it must disregard any factual arguments not supported by the evidence. The district court also properly instructed the jury on the State's burden of proof. We presume

6

juries follow the instructions they are given. *State v. Slusser*, 317 Kan. 174, 193, 527 P.3d 565 (2023). Further, at the outset of closing arguments, the prosecutor even told the jury:

> "All of the instructions are important and I'm not trying to suggest any one is more important than the other, you'll have them all back in the jury room with you but these are just some I like to highlight.
>
> "The first is Instruction 4 which says statements of counsel are not evidence. I ask you to hold me to that and also hold [defense counsel] to that when you are in your deliberations. Just because I say something may not mean it was reflected in the evidence so as we talk to you, it's your collective memory, it's what you heard that came into evidence that matters back in the jury room so I'd ask that you keep that in mind."

Based on the totality of the record, the State has clearly established, if there was error, it was harmless beyond a reasonable doubt.

Affirmed.