NOT DESIGNATED FOR PUBLICATION

No. 112,174

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANDRES PENA-GONZALES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; CHERYL RIOS KINGFISHER, judge. Opinion filed April 22, 2016. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Jodi Litfin*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., MCANANY and POWELL, JJ.

*Per Curiam*: A jury convicted Andres Pena-Gonzales of the rape of a 13-year-old girl whom we will refer to as B. He was also convicted of aggravated indecent solicitation of a child under 14 years of age and furnishing alcohol to a minor for illicit purposes. On appeal he claims that the district court erred in giving an improper limiting instruction, in giving other erroneous jury instructions, and in reading back to the jury more testimony than was requested. He claims that the prosecutor committed prejudicial misconduct and that there was insufficient evidence to support his rape conviction. Finally, he claims that cumulative errors denied him a fair trial.

1

The events leading to these convictions began in April 2009 when B. contacted Pena-Gonzales asked him for a ride to Topeka so she could hang out at the home of a friend. B.'s mother was previously married to one of Pena-Gonzales' close friends. B. and her older brother had known Pena-Gonzales for years and they referred to him as their "uncle."

Pena-Gonzales agreed to give the children a ride. When he arrived at their house, he had alcoholic beverages in his car, either bottles of Smirnoff Ice or strawberry daiquiris. He opened the bottles and offered them to the children. B. drank a couple of bottles on the ride to Topeka. Her brother, who was age 17, also consumed the beverages.

Rather than taking the children directly to the friend's house, Pena-Gonzales told them he was going to stop first at a gas station and get a pizza. At the gas station he did not buy a pizza but bought some Black & Mild cigars, which he shared with B.'s brother. Pena-Gonzales then drove the children to his house, where he said he wanted to show the boy his new truck. After checking out the truck, Pena-Gonzales and the boy went inside the house where B. was playing with the dog.

At that point, B.'s brother became sick from the alcohol he drank, so he stepped outside. When he tried to reenter the house, the doors were locked. The boy gave up trying to reenter the house and called a friend and left his sister alone with Pena-Gonzales.

According to B., when her brother stepped outside Pena-Gonzales locked the front door, and she "knew something bad was going to happen." When she was unable to get out the back door she ran to the bathroom and tried to lock the door, but there was no lock. Pena-Gonzales entered the bathroom and forced B.'s pants down. Pena-Gonzales said: "[J]ust let me put my penis in between your legs." B. resisted, but Pena-Gonzales

2

held her down, and B. felt his penis briefly penetrate her vagina. He then withdrew, masturbated on her leg, and then left.

B. opened the door and found her clothes sitting next to the door, along with her cell phone, a Black & Mild cigar, and a $50 bill. B. grabbed these items, got dressed, and fled and called for help.

When the police found her, she reported that she had been raped. Lieutenant Joe Perry reported that B. told him that her brother had taken her to her uncle's house, and her uncle offered to give her alcohol if he could perform oral sex on her. She said that when her brother left the house, her uncle raped her. She told Lieutenant Perry that Pena-Gonzales gave her two cigars and a $50 bill not to say anything. While Lieutenant Perry was talking to her, B. took the cigars and money out of her pocket and threw them on the ground and then fell to the ground "rocking back and forth and started crying hysterically."

At the hospital, B. told Detective Roger Smith that her "uncle" had raped her. Joy Thomas, a sexual assault nurse examiner, examined B. According to Thomas, B. told her that Pena-Gonzales had penetrated her vagina twice, but she was unsure whether it was his penis or his finger that he put inside of her. B. also told Thomas that Pena-Gonzales had sucked on her right breast. Thomas took for examination seminal fluid samples found on B.'s leg, along with DNA samples from B.'s breast and underwear. B.'s blood alcohol level was 0.01.

After this incident, B. and her brother were removed from their mother's custody and placed in foster care at different homes.

It was not until June 2009 that Detective Smith spoke with Pena-Gonzales on the phone. Smith set up a time to interview Pena-Gonzales in July 2009 but Pena-Gonzales

3

failed to appear for the interview. It took the police until June 2010 to file their report. Pena-Gonzales continued to live at the same house throughout the police investigation.

Then, in February 2012, almost 3 years after the events, the State finally charged Pena-Gonzales with rape, with an alternative charge of aggravated indecent liberties. Pena-Gonzales was also charged with furnishing alcohol to a minor for illicit purposes and aggravated indecent solicitation of a child under 14 years old. The police did not obtain a DNA sample from Pena-Gonzales until March 2012.

Before trial, the State moved pursuant to 2012 Supp. K.S.A. 60-455 to introduce at trial evidence of Pena-Gonzales' prior attempt to solicit sex from B. The court granted the motion on the grounds the evidence would be relevant as to motive, plan, and intent; and was more probative than prejudicial.

The jury trial took place in October 2012. B. was age 17 at the time of trial. The State's DNA expert testified that the DNA samples from B's leg and her underwear were seminal fluid, and Pena-Gonzales could not be excluded as the donor of these samples. B. testified that when she was little, "he used to tell me stories about how he used to do it to his daughter." She said that a couple of years before the present incident when she was about age 11, Pena-Gonzales offered her $100 if she would have sex with him.

During the instruction conference, the court proposed to give the jury the following limiting instruction regarding Pena-Gonzales' prior bad acts: "Evidence has been admitted tending to prove that the defendant committed a crime other than the present crime charged. This evidence may be considered solely for the purpose of proving the defendant's motive, opportunity, intent, preparation, and/or plan." Pena-Gonzales objected, but his objection was overruled. Also, he requested an instruction on attempted rape as a lesser included offense, but the court denied the request after counsel

4

for both parties acknowledged that the evidence was that penetration occurred and there was no evidence that Pena-Gonzales attempted penetration but failed.

The jury convicted Pena-Gonzales of rape, furnishing alcohol to a minor for illicit purposes, and aggravated indecent solicitation of a child under 14 years. The court dismissed the charge of aggravated indecent liberties which was an alternative to the rape charge of which Pena-Gonzales was convicted.

The court sentenced Pena-Gonzales to life in prison with a mandatory minimum of 25 years. Pena-Gonzales appeals his convictions.

*Prior Crimes Limiting Instruction*

The court granted the State's pretrial motion to admit evidence of Pena-Gonzales' prior misconduct in soliciting sex from B. when she was 11 years old. In the State's opening statement the prosecutor referred to the anticipated testimony on this subject. Pena-Gonzales' counsel objected. At the bench conference that followed, defense counsel acknowledged the court's prior ruling, but asked the court to reconsider it based on the evidence being "highly prejudicial." The court stated: "The Court is going to deny the defendant's motion."

As the trial continued the State elicited testimony from B. on this subject during her direct examination. Pena-Gonzales' counsel's only objection was, "I'm a little confused as to what time we are talking about here." The court sustained the objection, and B. clarified that the incident happened about 2 years before the rape.

At the instruction conference, Pena-Gonzales' counsel objected to Instruction No. 7, the court's proposed limiting instruction. He said, "Your Honor, I do object to Instruction No. 7, kind of a continuing objection as to the evidence that was presented,

5

60-455 evidence." In fact, defense counsel never asked for, and was never given, a continuing objection to the State's K.S.A. 60-455 evidence. Thus, Pena-Gonzales did not preserve for review the propriety of admitting the K.S.A. 60-455 evidence. In fact, on appeal he does not argue that admission of the K.S.A. 60-455 evidence was improper, other than a conclusory contention that its prejudice outweighed its probative value. He only provides argument on the claim that the limiting instruction was overly broad and contained unsupported elements to explain why the evidence was admitted and how the jury should consider it.

On appeal, Pena-Gonzales argues that the district court gave a "shotgun" instruction which was broader than the district court's ruling. See *State v. Donnelson*, 219 Kan. 772, 777, 549 P.2d 964 (1976) (the limiting instruction should not be in the form of a "shotgun" instruction that covers all of the eight factors set forth in K.S.A. 60-455); PIK Crim. 3d 52.06, Notes on Use. But at the instruction conference Pena-Gonzales' counsel did not object on the basis that the limiting instruction was overly broad. He belatedly attempted to raise and objection to the admission of the evidence. A party may not object on one basis at trial and raise a completely different objection on appeal. *State v. Reed*, 300 Kan. 494, 505, 332 P.3d 172 (2014). Thus, we will reverse only if the instruction was clearly erroneous. See K.S.A. 2015 Supp. 22-3414(3); *State v. Lewis*, 299 Kan. 828, 856, 326 P.3d 387 (2014).

Based on the court's pretrial ruling, the limiting instruction was overly broad. The district court ruled at the pretrial hearing that the K.S.A. 60-455 evidence was admissible to prove motive, plan, or intent. But the limiting instruction also refers to opportunity and preparation. Based on its pretrial ruling, the court should have limited the instruction to the factors for which the evidence had been ruled admissible. But does this require reversal?

6

K.S.A. 60-455 was amended in 2009 so as to relax the requirements for admitting evidence of prior sexual misconduct. Before the 2009 amendment, evidence of prior crimes or civil wrongs could be admitted only to prove specific material facts, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. K.S.A. 60-455 as amended in 2009 retained the factors of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident for most cases. But it added a new provision in subsection (d) which, in a criminal case charging the defendant with a sex crime, permits the admission of evidence of "another act or offense of sexual misconduct," and provides that such evidence "may be considered for its bearing on any matter to which it is relevant and probative." The only exceptions are when the prejudicial effect of the evidence outweighs its probative value under K.S.A. 60-445, or when evidence of a character trait is used to prove "the quality of [a person's] conduct on a specific occasion" under K.S.A. 60-448. See *State v. Prine*, 297 Kan. 460, 476-77, 303 P.3d 662 (2013).

Under this provision which was in effect at the time of Pena-Gonzales' trial, and which is now found in K.S.A. 2015 Supp. 60-455(d), the State did not need to justify admission of evidence of Pena-Gonzales' prior attempt to seduce B. by tying the evidence to one of the statutory factors, such as of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. It need only have shown that the evidence was "relevant and probative" and that its probative value outweighed its prejudicial effect. The district court found that these requirements were met.

The court properly admitted the evidence but did so under the more stringent statutory provision in K.S.A. 60-455 that applies to cases other than criminal cases involving sex crimes. Thus, the court's ruling was right but for the wrong reason. See *Prine*, 297 Kan. at 481. Had the district court admitted the evidence of Pena-Gonzales' prior misconduct based on K.S.A. 2012 Supp. 60-455(d), the evidence would not have been limited to establishing that the prior misconduct tended to prove one of the statutory

7

factor such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The evidence of Pena-Gonzales' prior misconduct could have been considered by the jury "for its bearing on any matter to which it is relevant and probative."

When evidence of prior sexual misconduct is admitted under K.S.A. 2012 Supp. 60-455(d), a limiting instruction is not required. *State v. Dean*, 298 Kan. 1023, 1035, 324 P.3d 1023 (2014); *Prine*, 297 Kan. at 478-79. Thus, there was no need in Pena-Gonzales' case for the jury to be instructed to confine its consideration of his prior misconduct to any of the statutory factors. Pena-Gonzales actually benefited from the limiting instruction he now criticizes. Issuing the limiting instruction under these circumstances granted Pena-Gonzales more protection than the law afforded him in the jury's consideration of his prior misconduct. Even though the limiting instruction was overbroad in view of the district court's pretrial ruling, Pena-Gonzales fails to show any prejudice from the court giving this instruction. See *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014).

*Other Claimed Instruction Errors*

As set forth in *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012), we review challenged jury instructions in the following fashion:

"'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and

8

degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).'" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015).

■ *Inference of Intent*

Pena-Gonzales argues that Jury Instruction No. 10 relieved the State of its burden to prove intent beyond a reasonable doubt.

Pena-Gonzales did not object to this instruction, so we apply the clear error standard. K.S.A. 2015 Supp. 22-3414(3); *State v. Smyser*, 297 Kan. 199, 204, 299 P.3d 309 (2013). In doing so, we follow a two-step process. First, we examine whether the instruction was given in error after considering whether it was legally and factually appropriate. Our review is unlimited in this analysis. Then, if we find error, we consider whether we are firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given. *State v. Clay*, 300 Kan. 401, 408, 329 P.3d 484 (2014). If not, we affirm. Pena-Gonzales has the burden to establish clear error under K.S.A. 2015 Supp. 22-3414(3). See *Betancourt*, 299 Kan. at 135.

Jury Instruction No. 10, which is identical to PIK Crim. 3d 54.01, provides:

"Ordinarily, a person intends all the usual consequences of his voluntary acts. This inference may be considered by you along with all the other evidence in this case. You may accept or reject it in determining whether the State has met its burden to prove the required criminal intent of the defendant. This burden never shifts to the defendant."

Pena-Gonzales claims this instruction was given in error because two of his three convictions involve a specific intent to commit a sex crime. Thus, he argues that this inference of intent instruction relieves the State of its burden to prove intent beyond a reasonable doubt.

9

The instruction does not apply to Pena-Gonzales' rape charge. To convict him of rape, the State only needed to prove that he had sexual intercourse with B. when she was under the age of 14. Intent did not matter.

But convictions for the other charges—furnishing alcohol to a minor for illicit purposes and aggravated indecent solicitation—required proof of a specific intent. To convict Pena-Gonzales of furnishing alcohol to a minor for illicit purposes, the State needed to prove that he supplied the alcohol with the intent to rape B. To convict him of aggravated indecent liberties with a child, the State needed to prove that he touched B. in a lewd manner with the intent to arouse or to satisfy his or B.'s sexual desires.

Thus, Instruction No. 10 was not legally appropriate for any of the charges against Pena-Gonzales.

The PIK Committee currently recommends that the inference of intent instruction used here, and found in PIK Crim. 3d 54.01, should no longer be used. But this did not occur until after Pena-Gonzales' trial. See PIK Crim. 4th 52.290.

Nonetheless, K.S.A. 2012 Supp. 21-5202(h) was in effect at the time of Pena-Gonzales' trial. It provides that "[a] person acts 'intentionally,' or 'with intent,' with respect to the nature of such person's conduct or to a result of such person's conduct when it is such person's conscious objective or desire to engage in the conduct or cause the result." K.S.A. 2015 Supp. 21-5202(h). Thus, the district court should not have given the jury this inference of intent instruction. But does this require a reversal?

We conclude that it does not. The inference of intent instruction, "is a rule of evidence and does not deal with the required element of criminal intent necessary for conviction in those cases where criminal intent is a necessary element of the offense."

10

PIK Crim. 3d 54.01, Notes on Use; *State v. Lassley*, 218 Kan. 752, 756, 545 P.2d 379 (1976).

We do not consider individual instructions in isolation but consider them as a whole to determine whether they accurately instructed the jury on the law applicable to the facts at trial. With respect to the rape charge, there was no intent instruction to give. With respect to the charges of furnishing alcohol to a minor for illicit purposes and aggravated indecent liberties with a child, the jury was properly instructed on the specific intent the State needed to prove in order to support a conviction for each crime. The jury was properly instructed on the presumption of innocence and the burden of proof. Because the jury was accurately instructed regarding the intent element of each individual crime, Instruction No. 10 did not relieve the State of its burden to prove intent beyond a reasonable doubt. Pena-Gonzales has failed to prove that the jury would have reached a different verdict without Instruction No. 10. See *Betancourt*, 299 Kan. at 135. Thus, we find no clear error.

■ *Lesser Included Offense Instruction of Attempted Rape*

Pena-Gonzales argues that the district court should have instructed the jury on the lesser included offense of attempted rape as he requested at the instruction conference.

Pena-Gonzales was charged under K.S.A. 21-3502(a)(2), which defines rape as "sexual intercourse with a child who is under 14 years of age." Sexual intercourse is defined as "any penetration of the female sex organ by a finger, the male sex organ or any object. Any penetration, however slight, is sufficient to constitute sexual intercourse." K.S.A. 21-3501(1). An attempt to commit a crime was defined under K.S.A. 21-3301 as "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." See PIK Crim. 3d 55.01.

11

Pena-Gonzales's argument on appeal is undercut by the words of his own counsel at the instruction conference:

"THE COURT: Was there any testimony by anyone that there was not penetration?

"[PROSECUTOR]: No, Your Honor. And she has never given a statement that would suggest there was anything but penetration.

. . . .

"[DEFENSE COUNSEL]: I think counsel is correct. My recollection of all the evidence is that there's no individual who would state that there was an attempt to penetrate, and that it didn't happen. All the evidence shows that, if you believe it, that there was penetration of either a finger or a penis."

In order for the court to instruct on a lesser included offense, there needs to be some evidence to support a conviction of the lesser offense. K.S.A. 2015 Supp. 22-3414(3). We find none here. Neither did defense counsel. Any penetration, however brief, is sufficient to support a charge of rape. *State v. Portillo*, 294 Kan. 242, 247, 274 P.3d 640 (2012). There was no evidence that Pena-Gonzales attempted, but ultimately failed, the act of penetration.

Pena-Gonzales tries to make something out of the fact that Detective Smith noted in his report that he heard B. state that she "didn't know if [Pena-Gonzales] penetrated her with his penis or with one of his fingers." This statement does not bring into question whether there was any penetration at all, as Pena-Gonzales suggests. Further, it does not matter whether a defendant uses his penis or a finger to penetrate the victim. Either way, the crime is rape.

There was no evidence presented at trial that would have reasonably justified a conviction of attempted rape. See *State v. Gaona*, 293 Kan. 930, 950-51, 270 P.3d 1165

(2012); *State v. Hammon*, 245 Kan. 450, Syl. ¶ 1, 781 P.2d 1063 (1989). The court did not err in refusing to give an instruction on the lesser included crime of attempted rape.

◼ *"Shotgun" Instructions*

Pena-Gonzales argues the district court erred by giving "shotgun" instructions, which encompassed multiple ways to establish proof of the elements of each crime. He did not object at trial to the giving of the instructions he now criticizes, so we again use the clear error standard described above.

A "shotgun" instruction lists factors that are overbroad and does not focus on the object of proof. Pena-Gonzales cites no legal authority as a basis for his criticism of these instructions. But he did identify the concept of a "shotgun" instruction as having application to a limiting instruction with respect to K.S.A. 60-455 evidence. If we go back to his claim of error regarding the district court's K.S.A. 60-455 limiting instruction, we see where he cites cases that criticize a limiting instruction that permits the jury to consider evidence for purposes beyond the basis for admitting the evidence in the first place. See *State v. Donnelson*, 219 Kan. at 777; *State v. Bly*, 215 Kan. 168, 176, 523 P.2d 397 (1974).

But with regard to the present issue, none of the three "shotgun" instruction errors claimed by Pena-Gonzales involves a limiting instruction, and he does not explain how the concept applies to these instructions. But setting that issue aside, because Pena-Gonzales ultimately must prove prejudice from the giving of these instructions in order for us to find clear error, we will focus on that element of the analysis.

First, he notes that Instruction No. 12, which instructed the jury on the elements of rape, included a definition of sexual intercourse as any penetration of the female sex organ by a finger, the male sex organ, or any object. Pena-Gonzales argues that while

13

there was evidence of penetration by either his finger or his penis, there was no testimony regarding penetration with "any object." But Pena-Gonzales does not cite any case law or make any argument as to how the jury would have been confused by this instruction. He has failed to meet his burden of showing that he was at all prejudiced because the jury could have been confused by the breadth of this instruction.

Second, Pena-Gonzales notes that Instruction No. 14, which instructed the jury on the elements of furnishing alcoholic beverages to a minor for illicit purposes, did not differentiate between "intoxicating liquor" and "cereal malt beverage." We fail to see how the jury may have been confused or misled by this instruction, and Pena-Gonzales makes no argument that he was prejudiced by this instruction. The only testimony on the subject was that Pena-Gonzales provided the children with Smirnoff Ice or strawberry daiquiris. These are mixed drinks containing intoxicating liquors. There was no evidence of the children being provided with a cereal malt beverage. We find no way in which the jury could have been confused or misled by this instruction.

Third, Pena-Gonzales notes that Instruction No. 15, which instructed the jury on the elements of aggravated indecent solicitation of a minor, stated that the jury could find Pena-Gonzales guilty if it found that he "invited, persuaded, or attempted to persuade [B.] to enter any vehicle, building, room, or secluded place with the intent to commit rape or aggravated indecent liberties with a child." He claims the evidence showed that B. voluntarily got into his car and voluntarily entered his home, and the jury was given a confusing array of options. But he does not explain how the facts of this case do not fit the jury instruction describing a "vehicle, building, room, or secluded place" or how the jury could have been confused by this instruction.

Taken as a whole, it would have been the better practice for these jury instructions to have been more narrowly tailored. But we find no indication that under the facts of this

14

case the jury was confused or could have been confused by the options presented in these instructions. Pena-Gonzales has not met his burden to show clear error.

*The Read-back of Testimony*

Pena-Gonzales claims the district court erred when, in response to the jury's request, the court reporter read back more testimony than was asked for.

K.S.A. 22-3420(3), which was in effect at the time of Pena-Gonzales' trial, provided:

> "After the jury has retired for deliberation, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, where the information on the point of the law shall be given, or the evidence shall be read or exhibited to them in the presence of the defendant, unless he voluntarily absents himself, and his counsel and after notice to the prosecuting attorney."

While K.S.A. 22-3420(3) requires the trial court to respond to the jury's request for further information on the law or the evidence presented at trial, the manner and extent of the district court's response is a matter of discretion. *State v. Adams*, 292 Kan. 151, 163, 254 P.3d 515 (2011).

During deliberations, the jury requested a read back of defense counsel's "line of questioning about the penetration and/or what penetrated [B.] and district attorney's questioning of penetration and or what penetrated [B.]" The court conferred with the parties on an appropriate response. During that conference Pena-Gonzales requested the court reporter read back Detective Smith's testimony regarding penetration as well as B.'s testimony on that issue. The court reporter's read-back included the following:

15

"'Q. When you first made contact with Mr. Pena, you told him that you were investigating an allegation of rape that was made against him, is that correct?

"A. Yes, uh-huh.

"Q. Did he respond to that?

"A. He denied it happened, said he hadn't seen them in about a year.

"Q. So he denied that the rape happened?

"A. Yes.

"Q. According to your report, you heard [B.] say that she didn't know if Pena penetrated her with his penis or with one of his fingers, is that what you heard?

"A. That's what I remember hearing. That's what I placed in my report.'"

Pena-Gonzales did not object to any portion of the testimony read to the jury. The contemporaneous objection rule applies to jury requests under K.S.A. 22-3420(3). A timely and specific objection provides the district court with the opportunity to correct any alleged trial errors. Without an objection, Pena-Gonzales is precluded from raising the issue for the first time on appeal. *State v. Groschang*, 272 Kan. 652, 672, 36 P.3d 231 (2001). Pena-Gonzales has not preserved this issue for appellate review.

*Prosecutorial Misconduct*

Pena-Gonzales argues that the prosecutor committed reversible misconduct in his closing argument. We will consider this issue even though no contemporaneous objection was made at trial. *State v. Anderson*, 294 Kan. 450, 461, 276 P.3d 200 (2012).

In considering this issue, we first determine whether the prosecutor's comments were outside the wide latitude that the prosecutor is allowed in discussing the evidence. If the comments were improper and constituted misconduct, we then must determine whether the comments so prejudiced the defendant that he was denied a fair trial. *State v. Roeder*, 300 Kan. 901, 932-33, 336 P.3d 831 (2014), *cert. denied* 135 S. Ct. 2316 (2015).

16

In this second step of the analysis, we consider three factors: (1) whether the misconduct was gross and flagrant; (2) whether the misconduct was motivated by the prosecutor's ill will; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. *State v. Williams*, 299 Kan. 509, 540, 324 P.3d 1078 (2014). None of these three factors is individually controlling. Before the third factor can ever override the first two factors, we must be able to say that the harmlessness tests of both K.S.A. 60-261 and *Chapman v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) have been met. *Williams*, 299 Kan. at 540-41. Under the constitutional harmless error test, the party benefitting from any prosecutorial misconduct must prove beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record. Under the statutory harmless error standard, we must determine whether "'there is a reasonable probability that the error did or will affect the outcome of the trial in light of the entire record.' [Citation omitted.]" 299 Kan. at 541.

Finally, K.S.A. 2015 Supp. 60-261 states that no error at trial is grounds for granting a new trial or setting aside a verdict "[u]nless justice requires otherwise."

■ *"Must" Convict if Elements Proven*

The court instructed the jury that it should convict if there is no reasonable doubt as to the defendant's guilt. The court stated:

> "The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *should* find the defendant guilty." (Emphasis added.)

17

See PIK Crim. 3d 52.02. But Pena-Gonzales argues that the State committed prosecutorial misconduct by turning *should* into *must* when the prosecutor told the jury in closing argument:

> "Each one of these charges as the Judge instructed you is a separate offense. You must look at each of those charges individually and determine if the elements have been met for each individual charge. And if you find they have been met you *must* find [him] guilty on that charge and move on to the next one." (Emphasis added.)

Pena-Gonzales claims that the prosecutor's statement took away the possibility of jury nullification, citing *State v. Smith-Parker*, 301 Kan. 132, 164, 340 P.3d 485 (2014), which overruled *State v. Lovelace*, 227 Kan. 348, 607 P.2d 49 (1980).

Jury nullification is

> "'[a] jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness.' Black's Law Dictionary 875 (8th ed. 2004)." *Silvers v. State*, 38 Kan. App. 2d 886, 888, 173 P.3d 1167, *rev. denied* 286 Kan. 1180 (2008).

Before a trial begins, all jurors swear on their oaths to try the case conscientiously and to return a verdict according to the law and the evidence. K.S.A. 2015 Supp. 60-247(d). Violation of that oath is to be neither commended nor encouraged. While jurors in a criminal case have it within their power to acquit a defendant by disregarding the law and evidence, the Kansas Supreme Court has consistently held that jury instructions informing juries of the power of nullification are not appropriate. See *Smith-Parker*, 301 Kan. 132; *State v. Naputi*, 293 Kan. 55, Syl. ¶ 4, 260 P.3d 86 (2011); *State v. McClanahan*, 212 Kan. 208, 210-17, 510 P.2d 153 (1973).

18

Pena-Gonzales attempts to distinguish not informing a jury of its right to nullify from misinforming the jury that it has no such right.

In *Lovelace*, the defendant challenged an instruction that stated: "'If you have no reasonable doubt as to the truth of any of the claims made by the State, you *must* find the defendant guilty as charged.'" (Emphasis added.) 227 Kan. at 354. At that time, PIK Crim. 52.02 used "should" rather than "must." The Kansas Supreme Court held the instruction was not given in error. The court found "no substantial difference [between should and must] and what differences there may be could very well be in [the defendant's] favor." 227 Kan. at 354. At the time of trial, *Lovelace* was the controlling law.

In 2014, the Kansas Supreme Court overruled *Lovelace* in *Smith-Parker*, wherein the district court instructed the jury: "'If you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you *will* enter a verdict of guilty.' (Emphasis added.)" 301 Kan. at 163. The court in *Smith-Parker* found "the wording of the instruction at issue in *Lovelace*—'must'—and the wording at issue here—'will'—fly too close to the sun of directing a verdict for the State. A judge cannot compel a jury to convict, even if it finds all elements proved beyond a reasonable doubt." *Smith-Parker*, 301 Kan. at 164.

*Smith-Parker* does not state the law in effect at the time of Pena-Gonzales' trial. *Lovelace* controlled. Besides, the errors claimed in the cases cited by Pena-Gonzales involved claimed erroneous instructions given by the court. Here, the court instructed the jurors that if the State has proven its case, they *should* convict rather than *must* convict.

Finally, we evaluate the prosecutor's argument in the context of the jury instructions clearly informing the jury of the State's burden of proof. See *State v. Cosby*, 293 Kan. 121, 137, 262 P.3d 285 (2011). The jury instructions clearly informed the jury:

"If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *should* find the defendant guilty." (Emphasis added.) The jury is presumed to have followed the jury instructions. See *State v. Mitchell*, 294 Kan. 469, 482, 275 P.3d 905 (2012).

We find no reasonable possibility that the prosecutor's use of the word "must" during closing argument affected the outcome of the trial.

■ *Loose Description of Some Elements of Each Crime in Opening Statement*

Pena-Gonzales makes the rather curious claim that the prosecutor gave a "loose description of some of the elements of each crime" in the course of his opening statement and that this amounted to prosecutorial misconduct by attempting to define the elements of the crimes before any evidence has been introduced and by usurping "the district court's power and role in the trial" to make rulings on the law. His claim is based on the following remarks of the prosecutor:

> "This case that you are about to hear we've already talked about in voir dire a little bit. This is the defendant charged with rape, aggravated indecent liberties with a minor under 14, furnishing alcohol to a minor for illicit purposes and the instructions at the end of this case will tell you that I have to prove his intent was to furnish that alcohol so that he could then engage in the act of rape. Rape will be defined for you at the end of this case as intercourse with [B.], who was 13 years of age at the time; and the element is she is under 14, and the defendant was over 18. And the defendant has also been charged with aggravated indecent solicitation of a child, meaning that he solicited [B.] for the sexual contact that later occurred. That's what the evidence is going to show, that each of the elements of these offenses have been met."

Pena-Gonzales relies without exposition on K.S.A. 2015 Supp. 22-3414(1), which deals with the order of trial and provides in relevant part that "[t]he prosecuting attorney

20

shall state the case and offer evidence in support of the prosecution." He also cites *Miller v. Braun*, 196 Kan. 313, 316-17, 411 P.2d 621 (1966), in which the court stated:

> "The opening statements of counsel are generally no more than outlines of anticipated proof and are not intended as a complete recital of the facts to be produced on contested issues. Their purpose is to inform the jury in a general way of the nature of the action and defense; to advise it of the facts relied upon by the party to make up his cause of action or defense, and to define the nature of the issues to be tried and the facts intended to be proved, so as to better enable it to understand the case. [Citations omitted.]"

He provides no additional argument as to how the prosecutor's opening statement amounted to reversible error.

It is apparent to us that the prosecutor was simply providing the jury with a brief overview of the charges against Pena-Gonzales without making any assertion that these were the *only* things the State needed to prove for convictions. We see nothing to suggest that the prosecutor misinformed the jury about any of the elements he did mention. If he usurped the function of the court in instructing the jury on the law, then we suppose the court's jury instructions at the close of the case were superfluous. But obviously they were not. Instructing on the law is the function of the court, an area into which we see no untoward intrusion by the prosecutor. Having described the nature of the action and having stated the case for the prosecution, the prosecutor went on to describe the anticipated testimony of the various witnesses which would support the State's case. We find nothing improper in the prosecutor's conduct in this regard.

■ *Arguing Facts Not in Evidence*

Pena-Gonzales also contends the prosecutor engaged in misconduct when he speculated about facts not in evidence during closing statement. The prosecutor stated:

21

"The defendant talked to Detective Roger Smith. He didn't say, yeah, I saw [B.] and [her brother] back in April; they came to say the night with me; something happened, they ran off. I don't know where they went. He didn't say that. He didn't say they came to stay with me in April and [B.] thought I did something inappropriate, and she ran off and called the police. He didn't say that. What he told Detective Smith was I haven't seen her in a year. I haven't seen her in a year, 12 months. He talked to her in June. This incident occurred in April of 2009. Then when Detective Smith started talking to him more and telling him this is serious, then he said, well, I might have seen them in March, not in April, not when they came to his house, not that he went and picked them up. I might have seen them in March."

Pena-Gonzales complains that the prosecutor speculated about what would have been an appropriate response to Detective Smith's inquiry about B.'s claim of rape. The prosecutor's comments cannot be characterized as statements of facts not in evidence. They were not purported to be facts, and even Pena-Gonzales characterizes them as speculation of what might have been said, but was not said. Rather, we characterize them as proper comments on the contradictory statements Pena-Gonzales made to Detective Smith when he was interviewed about B.'s claim that he had raped her. See *State v. McReynolds*, 288 Kan. 318, 325, 202 P.3d 658 (2009). We do not find any misconduct in this regard.

*Sufficiency of Evidence to Support Rape Conviction*

Pena-Gonzales claims there was insufficient evidence to support his rape conviction because the only evidence of the rape came from the uncorroborated and inconsistent testimony of the victim.

In considering this claim we view the evidence in the light favoring the State to determine if a rational factfinder could have found Pena-Gonzales guilty beyond a reasonable doubt. In doing so, we do not reweigh the evidence, assess the credibility of

22

the witnesses, or resolve conflicting evidence. See *State v. Llamas*, 298 Kan. 246, 254, 311 P.3d 399 (2013). When the issue turns on the sole testimony of the complaining witness, we will find the evidence insufficient to support a verdict only in the rare case in which the testimony of that witness is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt based upon it. See *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

In order to convict Pena-Gonzales of rape, the State had to prove: (1) Pena-Gonzales had sexual intercourse with B., (2) B. was under 14 years of age when the act of sexual intercourse occurred, and (3) the act occurred on or about April 18, 2009, in Shawnee County.

B. testified that she was age 13 at the time of the crime, and that testimony was undisputed. B. testified that Pena-Gonzales forcefully penetrated her vagina with his penis. There was testimony this happened on the date alleged and at Pena-Gonzales' house which is in Shawnee County. She told a number of people immediately thereafter that she had been raped, and she was crying, shaking, and visibly upset.

In attacking his rape conviction, Pena-Gonzales asks us to reassess B.'s credibility and resolve conflicts in the evidence. The trial in this case occurred more than 3 years after the rape, so some inconsistencies in B.'s testimony are understandable. The conflicts in the testimony cited by Pena-Gonzales have to do with ancillary issues, not the essential facts of the rape. None of the minor inconsistencies rises to the level of rendering B.'s testimony so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt. See *Matlock*, 233 Kan. at 5-6. We are mindful that it is the role of the jury, not ours, to make credibility determinations. See *State v. Kettler*, 299 Kan. 448, 469, 325 P.3d 1075 (2014). There is nothing in the record that is so incredible that it renders the verdict unsupported by substantial evidence. Sufficient evidence supports Pena-Gonzales' conviction for rape.

*Cumulative Error*

Finally, Pena-Gonzales argues that accumulation of trial errors denied him a fair trial and requires the reversal of his convictions. We have concluded that (1) it was unnecessary for the trial court to give any limiting instruction at all with respect to the K.S.A. 60-455 evidence, and (2) it was a nonprejudicial error to instruct on the inference of intent.

The trial court's limiting instruction on the use of K.S.A. 60-455 evidence actually favored Pena-Gonzales because it limited the jury's consideration of the K.S.A. 60-455 evidence when no such limitation was required under the version of K.S.A. 60-455 in effect at the time of his trial. With regard to the inference of intent instruction, we determined that it was superfluous with respect to the rape charge and harmless in view of the more specific instructions defining the specific intent necessary to convict on the other two charges and defining the State's burden of proof. We considered the possibility of prejudice with respect to the claimed "shotgun" instructions even though Pena-Gonzales made no attempt to tie the cases that involved overly broad limiting instructions to cases that did not involve a limiting instruction.

In a cumulative error analysis, we can disregard the issue of the court's limiting instruction which favored rather than prejudiced Pena-Gonzales. That would leave us with the erroneous inference of intent instruction, and we have already determined that the giving of that instruction was harmless.

But even if we consider both the limiting instruction issue, the inference of intent instruction issue, and the "shotgun" instruction issue in our cumulative error analysis, we conclude that there is no concern that Pena-Gonzales was denied a fair trial by the cumulative effect of giving these otherwise harmless instructions. Besides, the evidence against Pena-Gonzales was overwhelming. No prejudicial error may be found under the

24

cumulative error doctrine if the evidence against the defendant is overwhelming. *State v. Hilt*, 299 Kan. 176, 200, 322 P.3d 367 (2014).

Affirmed.