NOT DESIGNATED FOR PUBLICATION

No. 117,082

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BREYON D. MUKES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed September 7, 2018. Affirmed in part, reversed in part, vacated in part, and remanded with directions.

*Sam Schirer*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., STANDRIDGE, J., and RYAN W. ROSAUER, District Judge, assigned.

LEBEN, J.: There are many essential features of the American criminal-justice system. One of the most important is that the "State must prove every ingredient of an offense beyond a reasonable doubt." *Patterson v. New York*, 432 U.S. 197, 215, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977); see K.S.A. 2017 Supp. 21-5108(a). Because of the importance of that principle, our Supreme Court has cautioned prosecutors that, in argument to the jury, they "embellish on the definition of the burden of proof . . . at their peril." *State v. Magallanez*, 290 Kan. 906, 914, 235 P.3d 460 (2010).

In Breyon Mukes' criminal trial for two sex-offense and two firearm charges, a prosecutor's argument on the sex offenses went beyond established limits by suggesting that if a juror simply "believe[d]" the victim, then the State had met its burden to prove the charge beyond a reasonable doubt. Our Supreme Court rejected that position in *Magallanez*: "A juror's mere belief that an accused individual is guilty does not automatically mean that the State has met its burden." 290 Kan. at 914.

Based on our review of the trial transcript, we conclude that the prosecutor's statement in closing argument was error and that the State has not shown the error was harmless. We therefore reverse Mukes' sex-offense convictions and send the case back to the district court for a new trial on those charges.

Mukes also raises a valid claim of jury-instruction error related to his separate conviction for defacing the serial marking on a gun. On that offense, the court told the jury that Mukes' merely possessing the firearm with defaced markings was "prima facie evidence" that he had been the person who scratched out the serial numbers on it. While a Kansas statute does provide that possession of a firearm with defaced markings is prima facie evidence of the offense of defacing that firearm, that statute merely tells the court that the evidence is enough to present the issue to the fact-finder once the defendant's possession of the weapon is shown. The statute provides guidance to the trial court, not the jury, and the court's use of the term "prima facie" in a jury instruction—without explaining that legal term's meaning—added more confusion to the issue. We therefore reverse Mukes' conviction for defacing the firearm and send the case back for a new trial on that charge as well.

We find no error in the district court's handling of a separate charge for criminal possession of a firearm by a felon. We affirm Mukes' conviction on that count but vacate the sentence. The sentence for that count was entered on the basis that Mukes had been convicted of more-serious offenses, thus lowering the potential sentence on the firearm-

2

possession charge. Should Mukes be acquitted on retrial of the sex offenses, then the criminal possession of a firearm conviction would become the most serious (or "base") conviction for the purpose of calculating Mukes' sentence. In that event, the potential sentence could differ from the one entered before.

Mukes has raised several other issues on appeal. While some of them do not need to be considered since we are already ordering a new trial, we will address those that may come up again at that new trial along with any that, if successful, would eliminate or lessen one of the charges against Mukes.

FACTUAL AND PROCEDURAL BACKGROUND

The events that led to charges against Mukes began in September 2014. Mukes, age 20, and two of his sisters, Jasmine, 30, and S., 12, were living with his mother, an aunt, and an uncle. Early one morning, as Jasmine was walking to the bathroom, she noticed a shadow moving in the bedroom where S. was sleeping. Jasmine turned on the bedroom light and went in. She found her younger brother, Mukes, lying in the bed next to his sister. When she pulled back the covers, she saw Mukes' exposed penis.

Jasmine took S. out of the room and took her to the aunt and uncle. By the time the aunt and uncle came to check out S.'s room, Mukes wasn't there. They then found him in his own room. He denied having been in S.'s room. S. agreed that he hadn't been there.

When Jasmine came back to the home the next day, she found that a new doorknob (with a lock) had been placed on S.'s bedroom door, but it appeared to her that no one was going to make Mukes relocate to another residence. Jasmine called the police to report what she'd seen, and police investigated.

3

When police were questioning Mukes in his room, an officer noticed a handgun laying on the bed with the serial number scratched out. Mukes was on probation and prohibited from having a gun, so police took the gun and arrested Mukes.

In police interviews, S. at first denied Mukes' conduct. After a detective told S. that he could tell that she wasn't telling the whole truth, S. said that Mukes had engaged in sodomy with her in her bed more than once. She made similar statements to a hospital employee in a forensic interview, but no physical evidence of abuse was obtained.

The State charged Mukes with one count of aggravated criminal sodomy, one count of attempted aggravated criminal sodomy, criminal possession of a weapon by a convicted felon, and defacing the identification marks on a firearm. At one point, Mukes entered into a plea agreement under which he pleaded guilty to one count of aggravated criminal sodomy and the State dismissed the other charges. But Mukes asked to withdraw that plea and the court granted his request. So the case went to jury trial, and the jury convicted Mukes on all the original charges.

On each of the two aggravated criminal sodomy convictions, the court sentenced Mukes to serve life in prison with no parole eligibility until 25 years. The court made those sentences consecutive to one another, so Mukes would not be eligible for parole for 50 years. The court made the sentences for the other convictions concurrent, so his controlling sentence is life in prison with parole eligibility no sooner than 50 years.

Mukes has appealed his convictions to our court.

ANALYSIS

I. *The Prosecutor's Comments in Closing Argument Improperly Diluted the State's Burden to Prove Mukes Guilty Beyond a Reasonable Doubt.*

Mukes contends the prosecutor erred in closing argument by diluting the State's burden of proof. We look at claims of prosecutorial error in two steps. First, we look to see whether the prosecutor erred. Second, if there was an error, we must decide whether it prejudiced the defendant's right to a fair trial. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

The prosecutor's statement at issue told the jury that the State had met its burden if the jury believed S.'s testimony: "When it comes to [S.'s] testimony, Jasmine's testimony, and the burden of proof, beyond a reasonable doubt, if you believe [S.], then the State has reached that burden of beyond a reasonable doubt. If you believe Jasmine, the State has met the burden of beyond a reasonable doubt." In our view, the prosecutor went too far with these comments.

Our Supreme Court has emphasized that a prosecutor's misstatement of the law on burden of proof is an error that deprives the defendant a fair trial if the statement could confuse or mislead the jury. *Magallanez*, 290 Kan. at 915. Although the prosecutor's statement in *Magallanez* differed from the one in Mukes' case, we find the court's discussion of this issue in *Magallanez* suggestive that Mukes' argument wasn't proper either.

In *Magallanez*, the prosecutor told the jury "that the measure of reasonable doubt is 'an individual standard . . . a standard that when you believe he's guilty you've passed beyond [that standard].'" 290 Kan. at 914. The Kansas Supreme Court found that

5

statement improper because "[a] juror's mere belief that an accused individual is guilty does not automatically mean that the State has met its burden." 290 Kan. at 914.

The prosecutor's remark in our case is similar. The prosecutor told each juror that "[i]f you believe [S.], then the State has reached that burden of beyond a reasonable doubt." But a juror's belief that S. was telling the truth isn't necessarily the same as proof beyond a reasonable doubt. A juror might find it probable that S. is telling the truth; for that juror, that may be enough to "believe" S. That wouldn't be the same as proof beyond a reasonable doubt—and, of course, the jurors are supposed to take all the testimony into account, not each witness in isolation.

As our Supreme Court said in *Magallanez*, its cases "have demonstrated that prosecutors embellish on the definition of the burden of proof in criminal cases at their peril." 290 Kan. at 914 (citing cases). Prosecutors should heed that warning; the statement here went too far and diluted the State's burden of proof.

The harder question here is whether the misstatement by the prosecutor prejudiced the defendant's right to a fair trial. On that point, the State bears the burden to show that the error was harmless beyond a reasonable doubt. *Sherman*, 305 Kan. 88, Syl. ¶ 8. We conclude that the State has not met that burden.

The State's case came down mainly to the credibility of Jasmine and S. While their testimony was certainly sufficient to support conviction, there was no physical evidence and there were some contradictions in the testimony. We cannot find, in our review of the trial transcript, that the State has shown the error harmless beyond a reasonable doubt. We therefore must reverse Mukes' convictions on the sex-crime charges and send the case back for a new trial on those offenses.

6

II. *The District Court Erred in Instructing the Jury on the Charge of Defacing a Firearm.*

Mukes challenges his conviction for defacing a firearm in part based on a claim of jury-instruction error. Mukes objected in the district court to the instruction at issue, so we look first to see whether the instruction was legally correct. If it was not, then we must determine whether the error caused prejudice to Mukes or was harmless. *State v. Salary*, 301 Kan. 586, Syl. ¶ 1, 343 P.3d 1165 (2015).

Mukes challenges the italicized portion of the court's instruction, which told the jury that possession was "prima facie evidence" that the possessor had done the illegal act at issue:

"INSTRUCTION 10"

"The defendant is charged with defacing identification marks of a firearm. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:
1. The defendant intentionally changed, altered, removed, or obliterated the mark of identification of any firearm.
2. This act occurred on or about the 12th day of September, 2014, in Sedgwick County, Kansas."

*"Possession of any firearm upon which any such mark has been intentionally changed, altered, removed or obliterated shall be prima facie evidence that the possessor has changed, altered, removed or obliterated the same."*

"The State must prove that the defendant committed the crime intentionally. A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State." (Emphasis added.)

7

The italicized paragraph is taken verbatim from a section of the Kansas statute that defines the crime of defacing the identification marks on a firearm, K.S.A. 2017 Supp. 21-6306. The italicized paragraph is subsection (c) of that statute.

Instruction No. 10 was based on a Kansas pattern jury instruction (usually called PIK instructions based on the title of the pattern-instruction book, *Pattern Instructions Kansas*). See PIK Criminal 4th 63.060. But the pattern instruction does not include the italicized paragraph. Additionally, in a comment, the advisory committee that prepares the pattern instructions (which we call the PIK Committee) specifically references subsection (c) from the statute, so the committee's decision not to include it in the pattern instruction reflects a considered choice.

The Kansas Supreme Court has advised "that trial courts should follow the pattern instructions whenever possible." *State v. Appleby*, 289 Kan. 1017, 1065, 221 P.3d 525 (2009). Sometimes, of course, revision to make them better fit the facts of a case will be appropriate. But this case is a good example of an instruction error that has come about because the trial court decided to add another substantive legal point to an already-complete pattern instruction.

In their appellate briefs, the parties talk about whether the italicized paragraph created a presumption in the State's favor that, if the State proved Mukes possessed the gun, then the jury should presume that Mukes also defaced it. Things get complicated when we talk of presumptions—sometimes they're mandatory, sometimes permissive, and it's hard to tell the difference. It can be especially hard to explain all that to a jury. See K.S.A. 60-414; Lilly, Capra & Saltzburg, Principles of Evidence § 12.5 (7th ed. 2015).

In a criminal case like this one, if a presumption is applied to flip the burden of proof to the defendant, that's unconstitutional because the State must prove the defendant

8

guilty beyond a reasonable doubt on all elements of the charge. See *Francis v. Franklin*, 471 U.S. 307, 313, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985); *State v. Johnson*, 233 Kan. 981, 985, 666 P.3d 706 (1983); Principles of Evidence, § 12.8. That's what the defendant suggests happened here through the italicized paragraph.

The State suggests the italicized paragraph told the jury only that it could make an inference that Mukes had defaced the gun's identification marks if the jury found that Mukes had possessed the gun. But we don't think that's at all clear here given the court's use of the undefined term, "prima facie evidence," and the closing argument made by the prosecutor.

In that argument, the prosecutor moved directly from talking about the charge that Mukes was a felon illegally in possession of a gun to the charge that Mukes had defaced the gun's identification marks. As to that charge, the *only* things the prosecutor talked about were Mukes' possession of the gun, the lack of markings on it, and the instruction about prima facie evidence:

> "It's on the bed that [S.] saw the defendant sitting on just before they called the police, just before law enforcement showed up. The bed in the basement. The bed that [Mukes] uses when he says [there]. It's sitting on top of the sheets . . . and is in the possession of the defendant. Doesn't mean he owns it. Does not mean that he purchased it, but that he is in possession. He has a right of control over that firearm, and lastly, Count 4, which is instruction Number 10, the defendant intentionally changed, altered, removed, or obliterated the mark of identification of any firearm. . . . There is no marking on that firearm to identify it, and there is the prima facie evidence that it was in the defendant's possession. You can consider that when you review this charge."

Given the lack of a definition for the term "prima facie evidence," it's quite possible that jurors understood the instruction to put the burden on Mukes to disprove the presumed fact that whoever possessed the gun was the one who had defaced its markings.

9

As the defendant notes in his brief, the PIK Committee has concluded that the statutory provision that became the italicized paragraph in the instruction was not intended to create an evidentiary presumption. The "Notes on Use" provided by the PIK Committee on this criminal charge say that the statutory language was only intended to give a rule for the judge to use in determining whether sufficient evidence had been presented to take the case to a jury:

> "Subsection (c) of the statute provides that possession of an altered firearm is prima facie evidence that the possessor altered the same. This subsection does not create a presumption but only a rule to be applied in determining the sufficiency of the evidence." PIK Criminal 4th 63.060, Notes on Use.

For that reason, the PIK Committee didn't include the italicized language in its pattern instruction. Instead, it presented a simple, two-element instruction:

> "The defendant is charged with defacing identification marks of a firearm. The defendant pleads not guilty."

> "To establish this charge, each of the following claims must be proved:

> 1. "The defendant intentionally (changed) (altered) (removed) (obliterated) the (name of the maker) (model) (manufacturer's number) (mark of identification) of any firearm."
> 2. "This act occurred on our about the _____ day of _____, _____, in _____ County, Kansas." PIK Criminal 4th 63.060.

We agree with the PIK Committee's understanding of the effect of the statutory language in K.S.A. 2017 Supp. 21-6306(c). To understand what the committee was talking about, we first need to differentiate between two different aspects of the burden of proof—the burden of persuasion and the burden of production. See generally *State v. Ulteras*, 296 Kan. 828, 837, 295 P.3d 1020 (2013); Park, Leonard, Orenstein, Nance &

10

Goldberg, Evidence Law: A Student's Guide to the Law of Evidence as Applied in American Trials §§ 2.02 to 2.06 (4th ed. 2018).

The burden of persuasion addresses who has the burden to persuade and to what level of confidence that party must persuade the fact-finder. In a criminal trial, the prosecution has the burden to persuade the fact-finder at the beyond-a-reasonable-doubt level of confidence. And it's the fact-finder (a jury in Mukes' case) who determines whether the burden of persuasion has been met.

The burden of production determines whether a party has presented sufficient evidence to submit the issue to the fact-finder. On that question, the trial judge makes the call. In a criminal case, then, the trial judge determines whether the State has presented sufficient evidence that a juror *could* find, beyond a reasonable doubt, that the defendant committed the offense. If so, the case goes to the jury for determination. If not, the trial judge can grant a motion for judgment of acquittal. See *State v. Wiggett*, 273 Kan. 438, Syl. ¶ 1, 44 P.3d 381 (2002); K.S.A. 22-3419.

What the PIK Committee was saying in its Notes on Use, then, was that subsection (c) of K.S.A. 2017 Supp. 21-6306 deals with the burden of production. Since that's a standard that the trial judge, not the jury, considers, the PIK Committee did not reference prima facie evidence in its pattern instruction. We agree with the PIK Committee's reading of K.S.A. 2017 Supp. 21-6306. That's what the language of the subsection suggests—that the prima-facie-evidence rule is "only a rule to be applied in determining the sufficiency of the evidence," which is a call for the trial judge to make in determining whether the State has met the burden of production.

Under subsection (c), then, the Legislature has determined that the State's burden of production is met if the State proves that the defendant possessed the altered firearm. So if the trial judge concludes that the State has provided sufficient evidence to convince

11

a juror beyond a reasonable doubt that the defendant *possessed* the defaced weapon, then the question of guilt on the underlying criminal charge goes to the jury. The jury must then decide whether, when considering all the evidence (including the facts supporting the defendant's possession of the weapon), it believes beyond a reasonable doubt that it was the defendant who altered the weapon. The district court erred here by including the italicized paragraph in the jury instruction.

We must also determine whether that error prejudiced the defendant's right to a fair trial. See *Salary*, 301 Kan. 586, Syl. ¶ 1. Because the instruction error here relates to one of the defendant's constitutional rights (that the State prove every element of the offense beyond a reasonable doubt), the State bears the burden to show that the error was harmless beyond a reasonable doubt. *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011). We conclude that the State has not met that burden.

As we have already noted, the prosecutor in closing argument referenced no evidence to support the claim that Mukes had altered the weapon's markings other than its location when found—on the bed he often slept in. In its appellate brief, the State notes other evidence that supports the conclusion that Mukes was the one who scratched off the gun's serial number. The State suggests that since he couldn't legally possess a gun, he may well have removed the markings so that the gun's purchase history (presumably a recorded sale to him) wouldn't be accessible. That's circumstantial evidence that Mukes was the one who altered the gun's markings. But the jurors had to conclude the State had proven the charge beyond a reasonable doubt. We cannot find the error harmless beyond a reasonable doubt given the circumstantial nature of the evidence and the State's burden of persuasion at trial. We therefore reverse the defendant's conviction for defacing the identification marks on a firearm and send that charge back for a new trial.

III. *Any Error on the Charge of Criminal Possession of a Firearm Was Harmless*.

Mukes challenges his conviction for criminal possession of a firearm based on another claim of jury-instruction error. What made Mukes' possession of a firearm criminal was his status as a felon convicted of one of the offenses that bars firearm possession. See K.S.A. 2017 Supp. 21-6304(a). Often, a defendant will stipulate that he has been convicted of one of the felonies for which firearm possession is illegal so that the jury won't need to be told anything more specific about that prior offense. That's what Mukes agreed to here.

Normally, a stipulation is simply one form of evidence, so the underlying issue it relates to remains for the jury's consideration. But since the jury may rely on the stipulation—and there's usually no contrary evidence—the result on that point is pretty much assured.

The State submitted proposed jury instructions here consistent with that view of the effect of a stipulation; the State's instruction told the jury it had to find, as one of the elements of the offense, that the defendant had been convicted of a felony. The only evidence on that point would have been the parties' stipulation.

But the district court chose to give a more streamlined instruction that told the jury it needed only to find two facts to convict Mukes of this offense: (1) that he possessed a firearm and (2) that he did so in Sedgwick County on or about September 12, 2016. The court added to its instruction a reference to the stipulation: "The [S]tate and the defendant stipulate and agree that on the date in question, the defendant had been convicted of a qualifying felony that would prohibit him from owning or possessing a firearm."

Mukes complains on appeal that the court improperly took away an issue from the jury. And since the State has the constitutional obligation to prove the defendant guilty

13

beyond a reasonable doubt on all elements of an offense, Mukes argues that the error is of a constitutional nature. That means that in assessing harmlessness of any error, the State would have the burden to show harmlessness beyond a reasonable doubt. *Ward*, 292 Kan. 541, Syl. ¶ 6.

The State argues that the district court's decision on this point was authorized by the Kansas Supreme Court in *State v. Lee*, 266 Kan. 804, Syl. ¶ 4, 977 P.2d 263 (1999), and *State v. Mitchell*, 285 Kan. 1070, 1078-79, 179 P.3d 394 (2008). The State's point seems to be well taken: both *Lee* and *Mitchell* allow a defendant to stipulate to his or her status as a convicted felon and then provide for the court to instruct the jury that it may consider that status as proven by the parties' stipulation. *Mitchell*, 285 Kan. at 1079; *Lee*, 266 Kan. at 815-16. That's normally to the defendant's advantage because the overall procedure keeps the factual background about the defendant's past crimes away from the jury.

Even if the district court's instruction was in error, though, we find the error harmless here. Mukes doesn't suggest any basis on which the jury could have found he had no qualifying conviction. The only evidence before the jury was the parties' stipulation that he did. We are convinced beyond a reasonable doubt that any error in this jury instruction had no impact on the jury's verdict.

IV. *The District Court Did Not Err when It Denied Defendant's Motion for Acquittal*.

At the end of the State's evidence, Mukes moved for acquittal on the charges of aggravated criminal sodomy and attempted aggravated criminal sodomy. Mukes argued that the State had not proven beyond a reasonable doubt that he was at least 18 years old when he committed the offenses. That was an important aspect of the charge because the sentence is much greater if the defendant is at least 18 years old. See K.S.A. 2017 Supp. 21-5504(c)(3).

One clear piece of evidence about Mukes' age was presented before the defense motion for acquittal: Pamela Williams, who had been Mukes' guardian and helped raise him, testified that he was 20 years old when he was found in bed with S. Mukes asks us to ignore that evidence for the purpose of his motion because Williams was a defense witness. Her testimony was presented before the State rested as an accommodation to the defense.

Normally, the defense motion for acquittal would have come before the defense presented any of its own witnesses. Had that happened, the evidence about Mukes' age would have been somewhat less clear. But we find no reason to ignore Williams' testimony when considering Mukes' motion for acquittal.

K.S.A. 22-3419(1) provides that the court shall grant a motion for acquittal "if the evidence is insufficient to sustain a conviction of such crime or crimes." The statute makes the sufficiency of the *evidence* the key, and Williams' testimony was part of the evidence when Mukes moved for an acquittal. We cannot ignore that evidence simply because it was presented out of order.

The State had listed Williams as a potential witness when it filed the initial charging document in the case. Once she was called to testify, no matter who called her, counsel for both parties had the opportunity to question her. And her answers were in evidence. We find no authority in K.S.A. 22-3419(1) for the district court to ignore evidence that has been presented when it rules on a motion for acquittal. We find no error in its denial of the motion.

V. *The District Court Did Not Err by Admitting Hearsay Evidence of Mukes' Birthdate.*

Mukes also objected at trial to the testimony of a police detective, Virgil Miller, about Mukes' birthdate. Miller testified that he had found Muke's birthdate in a database

used by the Wichita Police Department. Mukes contends that this information was inadmissible as hearsay. The State argues that it was admissible under an exception to the hearsay rule for business records.

We review the district court's evidentiary rulings generally for abuse of discretion. Under that test, unless the court's ruling was based on a legal or factual error, we overturn it only if no reasonable person would have agreed with it. *State v. Seacat*, 303 Kan. 622, 634-35, 366 P.3d 208 (2016).

Mukes is right that the information was hearsay, which is defined as evidence of a statement made other than by the witness who is testifying when offered to prove the truth of that statement. K.S.A. 2017 Supp. 60-460. Someone had told a police department employee at some point what Mukes' birthdate was and that information had been put into the database. So the information was hearsay when the State offered it to prove what Mukes' birthdate was.

We turn then to the business-records exception to the hearsay rule, which the State says allowed admission of Miller's testimony. Under that exception, records of acts or events may be offered for their truth if the judge finds that (1) they were made as part of regular business operations at or about the time of the acts or events and (2) the sources of information for the records indicate that they are trustworthy. K.S.A. 2107 Supp. 60-460(m).

Miller told the jury that he had access to a database used by the Wichita Police Department in which information from the department's investigations was stored. Miller said that "[v]irtually anyone who talks to an officer or any sort of investigat[or] is probably going to be asked their date of birth, and that information will be catalogued and maintained in the Wichita Police Department database." He also testified that birthdate information becomes available to him when a person has been on probation locally, as

16

Mukes had been. And from his review of the department's records, he testified that Mukes' birthdate was June 6, 1994.

We conclude that the State presented enough foundational evidence to apply the business-records exception. Police investigators regularly ask for the birthdate of witnesses and subjects of investigation; that information is then placed into the database for all officers to use when carrying out their duties. The records are made in the regular course of business, at about the time the information is obtained, and is relied on as trustworthy by the department. The district court did not err when it allowed Miller to testify about Muke's birthdate.

VI. *The State Presented Sufficient Evidence to Support a Conviction for Defacing the Identification Marks on a Firearm.*

Mukes challenges the sufficiency of the evidence to support his conviction for defacing the identification marks on a firearm. Although we have set aside that conviction, we must address this issue because a new trial would not be appropriate if the State's evidence wasn't sufficient to support a conviction. We must determine whether the evidence would be sufficient, taken in the light most favorable to the State, to convince a rational fact-finder beyond a reasonable doubt that Mukes was guilty. See *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016).

Under K.S.A. 2017 Supp. 21-6306(a), it's a crime to deface the identification marks on a firearm by intentionally changing, altering, removing, or obliterating them. For the purpose of this issue, Mukes concedes that the State presented sufficient evidence that he possessed the firearm. But he argues the State's evidence that he was the one who defaced the gun's identification markings wasn't sufficient. He might have been merely in temporary possession of a gun someone else had altered, he argues. Or he might have bought the gun after it had already been altered.

But when we look at the evidence in the light most favorable to the State, we also know that Mukes was a convicted felon who couldn't possess a firearm. Scratching out the serial number would have made it harder to trace the weapon. That could have been helpful whether Mukes had purchased the weapon new from a store or gotten it used from someone else. In either case, making it harder to trace would be important to someone who knew he couldn't legally possess the weapon. In addition, of course, the jury knew that Mukes had been in possession of the weapon and that the serial number was unreadable. When taken in the light most favorable to the State, the evidence was sufficient to convict on this charge.

VII. *We Need Not Address Defendant's Claim That He Was Denied the Right to Represent Himself at Sentencing.*

Mukes' final argument on appeal is a claim that his right to represent himself was denied at sentencing. We have reversed three of Mukes' four convictions and vacated all of Mukes' sentences. We conclude that we need not address this final issue.

First, the circumstances of his initial sentencing are unlikely to recur in the same fashion. Mukes' "Motion for Self Representation," filed shortly before sentencing, was filed along with a companion motion making complaints about the way his attorney had represented him. We have ordered a new trial on three of the four charges, so it's not at all clear that the complaints Mukes had before his earlier sentencing hearing will still be relevant at the next one. Second, the remedy Mukes asks for on this issue is one we've already granted—vacating his sentences. When Mukes' new sentencing occurs, whether on the single conviction we've affirmed or on more, should he be convicted on more charges in the retrial, the district court can determine whether Mukes wants to represent himself.

We reverse Mukes' convictions for aggravated criminal sodomy, attempted aggravated criminal sodomy, and for defacing the identification marks on a firearm; we affirm Mukes' conviction for criminal possession of a firearm; we vacate all of Mukes' sentences; and we remand the case for further proceedings.